IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**GERMMA HAMMOND**, on behalf of
himself and all other similarly situated
employees,

             Plaintiffs,

    v.

**FLOOR AND DECOR OUTLETS OF
AMERICA, INC**.,

             Defendant.

Civil Action No. 3:19-cv-01099
Honorable Aleta A. Trauger

JURY DEMAND

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
OR IN THE ALTERNATIVE TO DISMISS AND/OR STRIKE**

Dated: March 5, 2020

Lincoln O. Bisbee, admitted pro hac vice
Russell R. Bruch, admitted pro hac vice
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20001
Tel:    (202) 739-3000
Fax:    (202) 739-3001
lincoln.bisbee@morganlewis.com
russell.bruch@morganlewis.com

Keane A. Barger, TN Bar No. 33196
Katharine R. Cloud, TN Bar No. 019336
**RILEY WARNOCK & JACOBSON PLC**
1906 West End Avenue
Nashville, TN 37203
Tel:    (615) 320-3700
Fax:    (615) 320-3737
kbarger@rwjplc.com
kcloud@rwjplc.com

*Attorneys for Defendant Floor and Decor
Outlets of America, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION. ................................................................................. 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND. ............................ 3

    A.    Hammond's Arbitration Agreement. ............................................. 3

    B.    Hammond's Complaint And Relevant Procedural History. ................................. 4

III.    HAMMOND'S CLAIM SHOULD BE COMPELLED TO ARBITRATION AND THE COLLECTIVE CLAIM SHOULD BE DISMISSED. ............................................. 6

    A.    Legal Standard. ................................................................. 6

    B.    Hammond's Agreement Is Valid And Enforceable. ................................. 7

IV.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS OR STRIKE THE COLLECTIVE ACTION CLAIM. ................................................................. 9

    A.    Legal Standards. ............................................................... 9

        1.    Rule 12(b)(2). ....................................................... 9

        2.    Rule 12(b)(6). ....................................................... 10

        3.    Rule 12(f). ........................................................... 10

    B.    The Court Should Dismiss Or Strike The Collective Action Claim For Out-Of-State Individuals Due To Lack Of Personal Jurisdiction. ................ 11

        1.    This Court Lacks General Jurisdiction Over Floor & Decor. ................ 12

        2.    This Court Lacks Specific Jurisdiction Over Floor & Decor With Respect To The Claims Of Out-Of-State Opt-Ins. ................ 13

    C.    The Court Should Dismiss Or Strike The Collective Action Claim For Individuals Subject To Arbitration Agreements. ................................. 16

    D.    The Court Should Dismiss Or Strike The Collective Action Claim In Its Entirety, And At Least With Respect To Any Individuals Who Did Not Work In Floor & Decor's Nashville Store. ................................. 19

V.    CONCLUSION ................................................................. 20

# I.    __INTRODUCTION.__

Through this action, Plaintiff Gemma[1] Hammond alleges that Defendant Floor and Decor Outlets of America, Inc. ("Floor & Decor") violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime to him and a putative nationwide collective of allegedly similarly situated individuals. Specifically, Hammond alleges, in cursory fashion, that every manager at every Floor & Decor location across the country had an identical practice of "shaving" time in order to prevent all hourly employees from receiving overtime. Hammond's claim cannot proceed before this Court either individually or with respect to the nationwide collective action class pled in the Complaint.

As a starting point, Hammond's individual claim is subject to a mandatory, binding arbitration agreement between him and Floor & Decor. Hammond received a copy of the arbitration agreement as part of Floor & Decor's onboarding process, he accepted the agreement through continued employment (as specified in the agreement), and he received consideration for the agreement. Accordingly, the Court should compel his individual FLSA claim to arbitration and dismiss this action in its entirety.[2]

Even if Hammond were not subject to arbitration and could somehow proceed in this forum (which he cannot), that does not end the inquiry. The Court should still dismiss or strike the nationwide collective action class pled in the complaint for three independent reasons.

First, the Court should dismiss or strike the collective action claims brought on behalf of individuals who work(ed) for Floor & Decor outside of Tennessee due to a lack of personal

---

[1] Although the Complaint is styled *Germma Hammond v. Floor and Decor Outlets of America, Inc.*, Floor & Décor's records show that the proper spelling of Plaintiff's first name is Gemma.

[2] Pursuant to Local Rule 7.01(a)(1),counsel for Floor & Decor met and conferred with plaintiff's counsel about Floor & Decor's motion to compel arbitration, but the parties were unable to agree on the requested relief.

jurisdiction over those individuals. Floor & Decor has no objection to the Court exercising personal jurisdiction over Hammond and any opt-in plaintiffs who work(ed) at stores in Tennessee. Hammond's claim swerves off track, however, when it purports to join the claims of all hourly employees nationwide in this Court. Under Supreme Court precedent, this Court lacks personal jurisdiction over Floor & Decor, a Georgia and Delaware citizen, with respect to the claims of nonresident opt-in plaintiffs. As the Supreme Court and numerous other courts have recognized, it violates due process and is fundamentally unfair to require a company to adjudicate the claims of non-Tennessee plaintiffs in a Tennessee forum that is not in the company's chosen home and has no connection to the non-Tennessee plaintiffs' claims.

Second, the Court should dismiss or strike the collective action claims brought on behalf of individuals who are subject to arbitration agreements. Although the Complaint's collective action definition includes all hourly employees nationwide who utilized a particular timekeeping system, the vast majority of putative collective action class members are subject to arbitration agreements. Like Hammond, these individuals cannot proceed in this forum. Instead, their claims should proceed in arbitration, and the Court should dismiss or strike them from the putative collective action class.

Third, the Court should dismiss or strike the collective action claim in its entirety because the Complaint fails to plausibly allege that members of the putative class are similarly situated. The Complaint does not allege a single specific and plausible fact in support of its general assertion that Floor & Decor implemented a common, nationwide practice of shaving time for hourly employees. The Complaint's naked assertions concerning an alleged common practice do not meet the pleading standard required by Supreme Court precedent. This is fatal to Plaintiff's collective action claim.

-2-

For these reasons—and those provided below—Floor & Decor respectfully requests that the Court compel Hammond's individual claim to arbitration and dismiss this action. In the alternative, Floor & Decor respectfully requests that the Court dismiss or strike Hammond's collective action claim.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.

### A.    Hammond's Arbitration Agreement.

When Floor & Decor hired Hammond in late 2016, the Company maintained an arbitration agreement (the "Agreement") that was included in its employee handbook. (Declaration of Joel Fox ("Fox Decl.") ¶ 5; Floor & Decor April 2016 Employee Handbook, attached as Ex. 1, at 35.) Hammond, like all Floor & Decor employees, received the handbook—with the associated arbitration Agreement—at the start of his employment. (Fox Decl. ¶ 5.) Specifically, Hammond received the April 2016 employee handbook (the "Handbook"). (*Id.*; Ex. 1.) After Hammond received the Handbook and Agreement, the Nashville store completed a checklist verifying that he received new hire documents, including the Handbook (with the Agreement attached). (Fox Decl. ¶ 6; Hammond New Hire Forms Checklist, attached as Ex. 2.)

The Agreement provided to Hammond identified two ways that an employee could accept its terms and conditions. First, an employee could accept the Agreement by continuing employment with Floor & Decor. (Ex. 1 at 35 ("Your continued employment and/or your accepting employment with the Company . . . also shall constitute consideration and acceptance by you of the terms and conditions set forth in this Agreement.").) Second, an employee could accept the Agreement by signing an acknowledgment form. (*Id.* at 37.) The Agreement also contained an opt-out provision. (Fox Decl. ¶ 8; Ex. 1 at 39.) Had Hammond chosen to opt-out of the Agreement, a copy of the opt-out form would have been maintained in his personnel file. (Fox Decl. ¶ 8.) Hammond's personnel file includes no opt-out form. (*Id.*)

-3-

The Agreement is also supported by consideration. To start, the Agreement contains a mutual agreement to arbitrate. (Ex. 1 at 35.) In addition, Floor & Decor agrees: (1) to pay travel, lodging, and meal costs of the arbitrator; and (2) that it will not seek otherwise recoverable costs from the employee even if it prevails in arbitration. (*Id.*) Finally, the Agreement explicitly states that continued employment constitutes consideration, and that "[t]he parties agree that the consideration set forth in this paragraph is wholly adequate to support [the] Agreement." (*Id.*)

Under the Agreement, Hammond, like other Floor & Decor employees, is "required to arbitrate any and all disputes, claims, or controversies (claim) against the Company that could be brought in a court," including claims under the FLSA. (*Id.* at 33.) The Agreement further states that "[c]laims covered under this Agreement must be brought on an individual basis only." (*Id.* at 34.) "Accordingly, associates may not participate as a class or a collective action representative or as a member of any class, collective, or representative action, and will not be entitled to any recovery from a class, collective or representative action in any forum." (*Id.*)

B. **Hammond's Complaint And Relevant Procedural History.**

Hammond filed his Complaint (Dkt. No. 1) on December 10, 2019. For the purposes of this Motion only, Floor & Decor accepts the allegations in the Complaint as true.[3]

Floor & Decor is headquartered in Georgia and incorporated in Delaware. (Compl. ¶ 17; Fox Decl. ¶ 3.) Hammond is a resident of Davidson County, Tennessee and worked as a Warehouse Associate at Floor & Decor's Nashville store from October 2016 until approximately November 2018. (Compl. ¶¶ 15, 40-42.) During Hammond's employment, the General Manager of the Nashville store was James Donelson. (*Id.* ¶ 43.)

---

[3]As articulated below, this applies to plausible legal allegations, not threadbare conclusory statements. (*See infra* at p. 10.)

According to the Complaint, all Floor & Decor stores nationwide use a timekeeping system called Kronos. (*Id.* ¶ 8.) Hammond alleges that he regularly worked more than forty hours per week, but was not paid accurately because Donelson logged-in to Kronos on various occasions and reduced the number of hours recorded. (*Id.* ¶¶ 45-46, 48, 51.) The Complaint includes detailed allegations about three particular occasions on which Donelson allegedly "shaved" Hammond's time in order to prevent him from being paid overtime. (*Id.* ¶¶ 54-71.)

The Complaint also seeks to bring an FLSA claim on behalf of a nationwide collective action class. (*Id.* ¶ 1.) Specifically, Hammond seeks to represent a collective comprised of "[a]ll current and former Hourly Workers who worked more than 40 hours in a workweek for [Floor & Decor] from December 10, 2016 to the present for whom [Floor & Decor] recorded time using the Kronos timekeeping system." (*Id.* ¶ 25.) In contrast to Hammond's detailed allegations about the alleged "shaving" of his own time, his collective allegations are threadbare and conclusory. He claims that "Floor & Decor enforced a uniform policy or practice nationwide to deprive Hourly Workers of earned overtime compensation in violation of the FLSA" by engaging in "time shaving" in every store across the country (*Id.* ¶¶ 6-9), but provides no detail in support of that sweeping, general allegation.[4] Instead, the Complaint's specific allegations are laser-focused on a single manager, Donelson.

To date, three other individuals have opted-in to the collective action. None of these individuals has been added as a named plaintiff. One of the individuals (Amy Collins Hayes)

---

[4]Similarly, Hammond claims that "Floor & Decor is aware of this nationwide practice"because "Hourly Workers often complain to management about not receiving all the overtime compensation Floor & Decor owes them"(Compl. ¶ 10), but he does not offer a single detail concerning other employee complaints about manager "time shaving"or any other fact in support of his assertion that "time shaving"is a matter of uniform policy at every Floor & Decor store across the country.

-5-

claims to have worked for Floor & Decor in Tennessee. (Dkt. No. 14-1.) The other two opt-ins (Craig Cheuvront and Mark Turner) claim to have worked for Floor & Decor outside of Tennessee. (Dkt. Nos. 14-1 & 15-1.).[5]

## III. HAMMOND'S CLAIM SHOULD BE COMPELLED TO ARBITRATION AND THE COLLECTIVE CLAIM SHOULD BE DISMISSED.

### A. Legal Standard.

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with other contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (enforcing arbitration agreement and quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)); *Pruiett v. W. End Rest., LLC*, No. 3:11-cv-00747, 2011 WL 5520969, at *2 (M.D. Tenn. Nov. 14, 2011) (Trauger, J.) ("The FAA manifests a liberal federal policy favoring arbitration agreements."). Under the FAA, if the parties have entered into a valid and enforceable agreement to arbitrate and the dispute falls within the scope of that agreement, the court "must stay the proceedings until the arbitration is complete." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "Because arbitration agreements are fundamentally contracts, [the court] review[s] the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright*, 507 F.3d at 972.

"Tennessee law recognizes the validity of unilateral contracts, in which acceptance is indicated by action under the contract." *Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 895 (M.D. Tenn. 2003) (Trauger, J.) (enforcing arbitration agreement and citing *Cent. Adjustment Bureau v.*

---

[5] Although Turner submitted an opt-in form—and claims to be a current employee—Floor & Decor has no record of him ever working for the Company. In addition, although Hayes and Cheuvront claim to be current employees, their tenures with Floor & Decor ended years ago.

-6-

*Ingram*, 678 S.W.2d 28, 35 (Tenn. 1984)).  To "establish valid assent," it is sufficient that "[t]he written materials accompanying the arbitration agreement clearly state[] that continued employment after the effective date of the [arbitration agreement] would constitute the employee's acceptance of the agreement to arbitrate."  *Seawright*, 507 F.3d at 972; *see also Fisher*, 276 F. Supp. 2d at 895 (holding that "awareness of the existence and nature of the [arbitration agreement]" and "continued employment . . . constitute sufficient acceptance of the agreement as to make a valid contract.").

In Tennessee, a mutual agreement to arbitrate is sufficient consideration to support an arbitration agreement.  *See, e.g. Seawright*, 507 F.3d at 974 ("Under Tennessee contract law, mutuality of promise is ample consideration for a contract.  A mutual promise [to arbitrate] in itself would constitute a sufficient consideration.") (citations and internal quotation marks omitted)); *Wilks v. Pep Boys*, 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) (Trauger, J.) ("[T]he plaintiffs' claims that the [arbitration] Agreement is invalid for lack of consideration and because it constitutes an 'illusory promise' are without merit.  Both parties are bound to arbitrate claims arising in their relationship."); *Fisher*, 276 F. Supp. 2d at 895 ("[B]oth the plaintiff's continued employment and the parties' mutual promises to be bound by the Program serve as adequate consideration to make an enforceable contract.").

**B.  <u>Hammond's Agreement Is Valid And Enforceable</u>.**

Here, the Agreement unquestionably applies to Hammond's claims.  Not only does the Agreement cover "all disputes arising out [Hammond's] employment" at Floor & Decor, it specifically provides that: (1) it extends to "claims under . . . the Fair Labor Standards Act"; and (2) Hammond may not "participate as a class or a collective action representative or as a member of any class, collective, or representative action."  (Ex. 1 at 33-34.)  Thus, the sole remaining

-7-

question is whether Hammond and Floor & Decor entered into an enforceable agreement to arbitrate. They undoubtedly did.

First, the Agreement explicitly states that continued employment is one way of accepting "the terms and conditions set forth in this Agreement." (Ex. 1 at 35.) Accordingly, Hammond's continued employment establishes his acceptance of Floor & Decor's offer to mutually resolve disputes through arbitration. *See, e.g. Seawright*, 507 F.3d at 972; *Fisher*; 276 F. Supp. 2d at 895; *Terry v. AIG Am. Gen.*, No. 3:09-0057, 2010 WL 11575067, at *1-2 (M.D. Tenn. July 19, 2010), *report and recommendation adopted*, No. CV 3:09-0557, 2010 WL 11575044 (M.D. Tenn. Aug. 31, 2010) (compelling Plaintiff to arbitration where she "refused to sign" the agreement but continued her employment after the arbitration program implementation); *Johnson v. Long John Silver's Restaurants, Inc.*, 320 F. Supp. 2d 656, 664 (M.D. Tenn. 2004) (compelling plaintiff to arbitration even though he did not remember signing the agreement); *see also, e.g.*, *Sevier Cty. Sch. Fed. Credit Union v. Branch Banking & Trust Co.*, No. 3:19-cv-138, 2020 WL 130136, at * 8 (E.D. Tenn. Jan. 10, 2020) (finding that, under similar circumstances, "Tennessee law treats continued employment as assent to an agreement to arbitrate.").

In addition, the Agreement contains a mutual promise to arbitrate, which is sufficient consideration under Tennessee law. *See, e.g. Seawright*, 507 F.3d at 974; *Fisher*, 276 F. Supp. 2d at 895; *Wilks*, 241 F. Supp. 2d at 863. The Agreement also provides additional, independent consideration in the form of: (1) Hammond's continued employment; (2) Floor & Decor's promise to pay travel, lodging, and meal costs of the arbitrator; and (3) Floor & Decor's promise not to seek recoverable costs if it prevails in arbitration. (Ex. 1 at 35.)

In sum, the Agreement was properly offered and accepted, and was supported by adequate consideration. As such, this Court should enforce the agreement between Hammond and Floor &

Decor, and require the parties to arbitrate this dispute according to the terms of the Agreement. *See, e.g.*, *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 297 (6th Cir. 2018) (enforcing agreement and compelling arbitration); *McGrew v. VCG Holding Corp.*, 735 Fed. App'x 210, 211 (6th Cir. 2018) (affirming dismissal of collective action and compelling individual plaintiffs to arbitration); *Pruiett*, 2011 WL 5520969, at *7 (Trauger, J.) (compelling arbitration of FLSA claims where plaintiffs were subject to arbitration agreement).

After Hammond, the only named Plaintiff, is compelled to arbitrate, the Court should dismiss the lawsuit in full, including the claims of the opt-in plaintiffs. *See, e.g. Doe #1 v. Déjà Vu Consulting Inc.*, No. 3:17-cv-00040, 2017 WL 3837730, at *17 (M.D. Tenn. Sept. 1, 2017) (dismissing collective action complaint, including opt-ins, once named plaintiff's claims were compelled to arbitration); *McGrew*, 735 Fed. App'x at 211 (affirming dismissal of collective action and compelling individual plaintiffs to arbitration); *Ozormoor v. T-Mobile USA, Inc.*, 354 Fed. App'x. 972, 975 (6th Cir. 2009) (similar).

## IV. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS OR STRIKE THE COLLECTIVE ACTION CLAIM.

### A. Legal Standards.

#### 1. Rule 12(b)(2).

Personal jurisdiction "is an essential element of the jurisdiction of a district court without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (alterations and internal citations and quotation omitted). In response to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the nonresident defendant. *See, e.g. Parker v. Winwood*, 938 F.3d 833, 839-40 (6th Cir. 2019).

### 2. **Rule 12(b)(6)**.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555 (quotations and citations omitted). Stated differently, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[A] complaint alleging an FLSA collective action on behalf of oneself and others similarly situated is subject to pleading standards." *Roberts v. Corr. Corp. of Am.,* No. 3:14-cv-2009, 2015 WL 3905088, at *8 (M.D. Tenn. June 25, 2015); *see also, e.g.*, *Dyer v. Lara's Trucks, Inc.,* No. 1:12-CV-1785, 2013 WL 609307, at *3 (N.D. Ga. Feb. 19, 2013) (dismissing case and finding that when a plaintiff "fails to sufficiently allege the attributes of the similarly situated employees, the collective action claim may be dismissed at the pleading stage"); *Bush v. Vaco Tech. Servs., LLC*, NO. 17-cv-5605, 2019 WL 3290654, at *6 (N.D. Cal. July 22, 2019) (dismissing wage and hour class allegations where complaint was "devoid of factual information pertaining to how the Defendant's alleged actions impacted putative class members").

### 3. **Rule 12(f)**.

Federal Rule of Civil Procedure 12(f) allows the Court to strike "any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f). A court has "liberal discretion" to strike such filings as it deems appropriate under Rule 12(f). 2 Moore's Federal Practice § 12.37 (3d ed. 2002). "The function of the motion is to 'avoid the expenditure of time

and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (internal citation omitted)).  Put another way, to the extent a motion to strike has the effect of "streamlining the ultimate resolution of the action, the motion to strike will be well taken." *Montour v. Hartford Life & Accident Ins. Co.*, No. 07-5215, 2007 WL 9657702, at *3 (C.D. Cal. Oct. 1, 2007).  As with individual claims, the Court may utilize Rule 12(f) to strike collective claims.  *See, e.g.*, *Zarichny v. Complete Payment Recovery Servs., Inc.,* 80 F. Supp. 3d 610, 615, 624 (E.D. Pa. 2015) (striking class allegations).

### B. <u>The Court Should Dismiss Or Strike The Collective Action Claim For Out-Of-State Individuals Due To Lack Of Personal Jurisdiction.</u>

As an initial matter, the Court should dismiss or strike the collective action claim for individuals who work(ed) for Floor & Decor outside of Tennessee because the Court lacks personal jurisdiction over the Company with respect to their claims.  "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if [1] the defendant is amenable to service of process under the [forum] state's long-arm statute and [2] if the exercise of personal jurisdiction would not deny the defendant due process."  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *see also BNSF Ry Co. v. Tyrell*, 137 S. Ct. 1549, 1556 (2017) ("[A]bsent consent, a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction.").

Here, because the FLSA is silent regarding service of process, the Court must look to Tennessee's long-arm statute.  *See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 101 (1987) ("[W]hen a federal question case is based upon a federal statute that is silent as to service of process…a state long-arm statute is therefore utilized to serve an out-of-state defendant."); *Rafferty v. Denny's Inc.*, No. 5:18-cv-2409, 2019 WL 2924998, at *5 (N.D. Ohio

-11-

July 8, 2019) ("[T]he FLSA is silent as to service of process.). "As '[t]he Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause,' [the Court must] address only whether exercising personal jurisdiction . . . is consistent with federal due process requirements." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) (internal citation omitted).

As the Sixth Circuit has noted, "[p]ersonal jurisdiction can be either general or specific, depending upon the nature of the contacts the defendant has with the forum state." *Bird*, 289 F.3d at 873. As shown below, this Court lacks: (1) general jurisdiction over Floor & Decor; and (2) specific jurisdiction over Floor & Decor with respect to opt-in plaintiffs who work(ed) outside of Tennessee.

### 1. <u>This Court Lacks General Jurisdiction Over Floor & Decor</u>.

General jurisdiction refers to the power of a court to adjudicate any cause of action involving a particular defendant—irrespective of where the cause of action arose—because the defendant is "essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations and internal quotations omitted). "For a corporation, the place of incorporation and principal place of business" are where it may be "fairly regarded as at home." *Id.* at 137 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 922 (2011)). As discussed, Floor & Decor is headquartered in Georgia and incorporated in Delaware. It is thus not "at home" in Tennessee. Consequently, this Court may not exercise general jurisdiction over Floor & Decor and must rely on specific jurisdiction. *See Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (discussing requirements for general and specific jurisdiction); *see also Bristol-Myers Squibb Co. v. Super. Court of Cal.*, 137 S. Ct. 1773, 1787 (2017) (holding that state court lacked jurisdiction over claims of out-of-state putative class members where corporation was neither incorporated nor "at home" in the forum state).

-12-

## 2. This Court Lacks Specific Jurisdiction Over Floor & Decor With Respect To The Claims Of Out-Of-State Opt-Ins.

To establish specific jurisdiction, a defendant must "purposefully avail itself of the privilege of acting in the forum state," "the cause of action must arise from the defendant's activities there," and "the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Bridgeport Music*, 327 F.3d at 477-78 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *see also Bristol-Myers*, 137 S. Ct. at 1780 (holding that a claim must "arise out of or relate" to the defendant's "contacts with the forum"). "Failure to meet any one of the three prongs means that personal jurisdiction may not be invoked." *Canaday v. Anthem Co., Inc.*, No. 1:19-cv-01084, 2020 WL 529708, at *4 (W.D. Tenn. Feb. 3, 2020) (citing cases); *see also Turner v. Utiliquest, LLC*, No. 3:18-cv-00294, 2019 WL 7461197, at *3 (M.D. Tenn. July 16, 2019) (similar).

In *Bristol-Myers*, the Supreme Court held that the Fourteenth Amendment's guarantee of due process protects defendants from having to defend against claims with no connection to the forum state filed by out-of-state plaintiffs, even when other claims in the lawsuit (by plaintiffs who do have a connection to the forum state) are appropriately before the court. 137 S. Ct. at 1781. In other words, specific jurisdiction must be determined individually as to each plaintiff who purports to assert claims in a case, and the existence of personal jurisdiction with regard to Hammond's FLSA claim does nothing to establish personal jurisdiction concerning the FLSA claims of out-of-state opt-in plaintiffs.[6]

---

[6]As background, over 600 plaintiffs in *Bristol-Myers* asserted product liability claims in a mass tort action in California state court against Bristol-Myers Squibb ("BMS") concerning an allegedly defective prescription drug named Plavix. 137 S. Ct. at 1777. BMS was incorporated in Delaware and headquartered in New York, while most of the plaintiffs resided outside of California. *Id.* at 1777-78. Confronted with these facts, the U.S. Supreme Court held that the California courts

-13-

Although there is a split of authority as to whether *Bristol-Myers* applies to out-of-state putative Rule 23 class members,[7] the reasoning of decisions that have exempted Rule 23 class actions from *Bristol-Myers*' reach does not apply to FLSA collective actions because "FLSA collective actions are not the same as class actions." *Turner*, 2019 WL 7461197, at *3-4; *Canaday*, 2020 WL 529708 at *5. This is because FLSA opt-in plaintiffs "are more like the individual plaintiffs in *Bristol-Myers*." *Turner*, 2019 WL 7461197, at *4; *see also Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 59-60 (D. Mass. 2018) (holding that opt-in plaintiffs in an FLSA collective action are more analogous to the individual plaintiffs who were joined as parties in *Bristol-Myers* than to members of a Rule 23 certified class); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850-51 (N.D. Ohio 2018) (same).

Unlike certified Rule 23 class actions—that have "independent legal status" and where each class member is "bound by [the] judgment, whether favorable or unfavorable, unless he has 'opted-out' of the suit"—the "sole consequence" of conditional certification under the FLSA is "the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court." *Roy*, 353 F. Supp. 3d at 58-59.[8]

_____

lacked specific jurisdiction over the nonresidents' claims despite their legal and factual similarities to the residents' claims. *Id.* at 1781.

[7]Although not relevant to the instant FLSA collective action, it is worth noting that better-reasoned decisions have held that *Bristol-Myers* is fully applicable to Rule 23 class actions. As one court explained, "[t]he constitutional requirements of due process do not wax and wane when the complaint is individual or on behalf of a class." *In re Dental Supplies Antitrust Litig.*, No. 16-Civ-696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). Moreover, "[n]othing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions; rather, the Court announced a general principle—that due process requires a connection between the forum and the specific claims at issue." *Chavez v. Church & Dwight Co.*, No. 17-C-1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018) (internal citation and quotation marks omitted).

[8]*See also* 29 U.S.C. § 216(b) ("An action to recover [FLSA] liability may be maintained against any employer . . . by any one or more employees for and on behalf of themselves and other employees similarly situated. No employee shall be a *party plaintiff* to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which

Thus, unlike a Rule 23 class action, an FLSA collective action is indistinguishable from the mass tort action at issue in *Bristol-Myers*.

While the Sixth Circuit has not yet weighed-in on this issue, every district court in the Sixth Circuit to consider the issue—including this Court—has properly found that *Bristol-Myers* applies to out-of-state opt-in plaintiffs in FLSA collective actions. *See, e.g.*, *Canaday*, 2020 WL 529708, at *5 (granting motion to dismiss out-of-state opt-ins on personal jurisdiction grounds); *Turner*, 2019 WL 7461197 at *3 (denying conditional certification of out-of-state opt-ins on personal jurisdiction grounds); *Rafferty*, 2019 WL 2924998, at *7 (granting motion to dismiss out-of-state opt-ins on personal jurisdiction rounds); *Maclin*, 314 F. Supp. 3d at 848 (same).

Outside of this Circuit, the weight of authority is the same. *See, e.g.*, *Vallone v. The CJS Sol. Grp., LLC*, Civ. No. 19-1532, 2020 WL 568889, at *3 (D. Minn. Feb. 5, 2020) (compiling cases and noting that "[t]he weight of authority is that the strictures of [*Bristol-Myers*] apply in the FLSA conditional certification context"); *see also, e.g.*, *Indelicato v. Liberty Trans., Inc.*, No. 18-CV-253V, 2018 WL 3934074, at *8 (W.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, No. 18-CV-253, 2019 WL 1506931 (W.D.N.Y. Apr. 6, 2019) (dismissing collective action claim for out-of-state opt-ins due to lack of personal jurisdiction); *Storms v. Haugland Energy Grp.*, LLC, No. 18-cv-80334, 2018 WL 4347603, at *8 (S.D. Fla. Aug. 17, 2018), *report and recommendation adopted*, No. 18-CV-80334, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018) (same); *Maclin*, 314 F. Supp. 3d at 848 (same); *Sibers v Am. Med. Resp., Inc.*, No. CV-16-01671, 2017 WL 11240206, at *2 (D. Ariz. Sept. 1, 2017) (same); *see also, e.g.*, *Roy*, 353 F. Supp. 3d at 58-59 (denying conditional certification as to out-of-state opt-ins).

---

such action is brought.") (emphasis added). In short, as shown by the text of the FLSA itself, opt-in plaintiffs are not absentee class members. Instead, they are party plaintiffs just like the mass tort plaintiffs in *Bristol-Myers*.

-15-

In sum, this Court lacks specific jurisdiction over the claims of any opt-in plaintiff who did not perform work in Tennessee.[9] Those claims purport to seek overtime compensation for work performed exclusively outside of Tennessee from an employer who is not a citizen of Tennessee. There is no connection between those individuals' claims and the State of Tennessee that would give rise to specific jurisdiction. As a result, the Court should dismiss opt-in plaintiffs Cheuvront and Turner as well as Plaintiff's collective action claim to the extent that it purports to include individuals who work(ed) outside of Tennessee.[10]

C. **The Court Should Dismiss Or Strike The Collective Action Claim For Individuals Subject To Arbitration Agreements.**

As another threshold but dispositive matter, the Court should dismiss or strike the broad proposed collective action because it encompasses individuals who are subject to binding arbitration agreements.

To start, based on the time period governing the proposed collective action class, the vast majority of putative class members (if not all putative class members) are likely subject to Floor & Decor's arbitration agreement. (Fox Decl. ¶¶ 5, 9.) Recent case law has made clear that it is improper to include individuals with arbitration agreements within the scope of an FLSA collective action. The only two circuit courts to consider this issue have held that individuals subject to arbitration agreements should not receive notice of an FLSA collective action. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 498, 501 (5th Cir. 2019) (holding that "district courts may not send

---

[9]Striking the nationwide collective action allegations is particularly appropriate at this stage of the proceeding "before expensive and exhaustive discovery is undertaken,"as no amount of pre-certification discovery could render claims of putative opt-in plaintiffs who did not work in Tennessee suitable for adjudication in Tennessee. *Turner*, 2019 WL 7461197 at *3; *see also Operating Eng'rs Local 324*, 783 F. 3d at 1050 (stating that the function of a motion to strike is to avoid the expenditure of time and money that might arise from litigating spurious issues).

[10]Importantly, *Bristol-Myers* does not bar all nationwide FLSA collective actions. Such actions simply must be filed in a jurisdiction where the employer is subject to general jurisdiction.

-16-

notice to an employee with a valid arbitration agreement"); *Bigger v. Facebook, Inc.*, 947.3d 1043, 1050 (7th Cir. 2020) (holding that courts should not authorize collective action notice to individuals with valid arbitration agreement waiving right to join such actions). As the Fifth Circuit noted, permitting such individuals to receive notice "reaches into disputes beyond 'one proceeding' . . . [and] 'merely stirs up litigation,' which is what [the Supreme Court's decision in] *Hoffman-La Roche* flatly proscribes." *In re JPMorgan Chase & Co.*, 916 F.3d at 502 (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).

District courts in the Sixth Circuit also routinely exclude individuals with arbitration agreements from collective action claims, including at the pleading stage. *See, e.g.*, *Graham v. Word Enters. Perry, LLC*, No. 18-cv-10167, 2019 WL 2959169, at *5 (E.D. Mich. June 18, 2019) (granting motion to dismiss and finding that "employees who are bound to arbitrate may not receive notice of conditional certification if this court grants it"); *Wilks*, 241 F. Supp. 2d at 867 (Trauger, J.) (dismissing FLSA claims of "the plaintiffs and prospective plaintiffs who have executed the Mutual Agreement to Arbitrate Claims in versions that do not differ in material respects from the versions before the court"); *see also, e.g.*, *Myers v. TRG Customer Sol., Inc.*, No. 1:17-cv-00052, 2017 WL 3642295, at *6 (M.D. Tenn. Aug. 24, 2017) (Trauger, J.) (deferring ruling on conditional certification and finding that "[i]f, in fact, Myers and other similarly situated current and former IBEX employees are subject to arbitration agreements that either implicitly or expressly require them to pursue arbitration individually rather than collectively, then *certification of a collective class would be an exercise in futility*") (emphasis added); *Piner v. Freedomroads,*

-17-

*LLC*, No. 2:17-cv-902, 2018 WL 3872152, at *3 (S.D. Ohio Aug. 15, 2018) (denying motion for conditional certification based on agreements to arbitrate claims on an individual basis).[11]

In addition to the above case law, permitting individuals who assented to Floor & Decor's arbitration agreement—and thus agreed to arbitrate FLSA claims and waived the right to participate in collective actions—to be included in the definition of the collective deprives Floor & Decor of a right for which it bargained. And as the Supreme Court has held, arbitration agreements "must be enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018). Accordingly, ignoring arbitration agreements when defining a collective action—including at the pleading stage, if the issue is raised—conflicts with the FAA by failing to treat the agreements as enforceable. Such a result would be untenable.

Importantly, Floor & Decor is not asking the Court to evaluate the factual details of potential opt-in plaintiffs' arbitration agreements at this time. The Company is simply moving to dismiss or strike the claims of individuals who are subject to valid arbitration agreements. In other words, Floor & Decor requests that the Court rule—purely as a matter of law—that individuals subject to valid arbitration agreements are dismissed or stricken from the putative collective action class.

---

[11]Courts across the country have reached the same conclusion as these decisions. *See, e.g.*, *McGuire v. Intelident Sol., LLC*, 385 F. Supp. 3d 1261, 1264 (M.D. Fla. 2019) (excluding employees who signed a valid arbitration agreement from conditionally certified collective action); *Swales v. KLLM Transp. Servs., LLC*, 410 F. Supp. 3d 786, 794 (S.D. Miss. 2019) (excluding truck drivers with collective action waiver from conditional certification in truck drivers' action against employer); *Miller v. MV Transp., Inc.*, 331 F.R.D. 104, 110 (W.D. Tex. 2019) ("[W]here—as here—an arbitration agreement may prevent potential plaintiffs from participating in the collective action, a district court must ensure…that notice is not sent to them."); *Brayman v. KeyPoint Gov't Sol., Inc.*, No. 18-cv-0550, 2019 WL 3714773 (D. Colo. Aug. 7, 2019) (granting motion to strike notices of consent to join collective action filed by opt-in plaintiffs subject to arbitration agreements).

-18-

**D. The Court Should Dismiss Or Strike The Collective Action Claim In Its Entirety, And At Least With Respect To Any Individuals Who Did Not Work In Floor & Decor's Nashville Store.**

Lastly, the Court should strike the collective action claim—in its entirety and certainly with respect to individuals who did not work under Donelson in the Nashville store—because the Complaint's allegations do not plausibly allege that putative class members are similarly situated as required by the Supreme Court's holdings in *Iqbal* and *Twombly* and cases applying those decisions.

When seeking to bring a collective action under the FLSA, the named plaintiff must allege facts sufficient to demonstrate that the proposed members are "similarly situated." 29 U.S.C. § 216(b). Stated differently, "at the pleading stage, plaintiffs asserting FLSA collective actions must make *plausible* allegations that there are similarly situated employees with certain common alleged attributes that could support a collective action." *Ecoquij-Tzep v. Hawaiian Grill*, No. 3:16-cv-00625, 2016 WL 3745685, at *5 (N.D. Tex. July 12, 2016); *accord Bearden v. Honeywell Intern., Inc.*, No. 3:09-01035, 2010 WL 1223936, at *9 (M.D. Tenn. March 24, 2010) (Trauger, J.) (emphasis added) (noting that "this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained") (internal citation omitted).

In this case, Hammond alleges in broad and cursory fashion that Floor & Decor had a common, nationwide practice whereby every individual manager at more than 100 locations in over two dozen states uniformly "shaved" the time of any employee who worked more than forty hours in a week. Although the Complaint includes conclusory statements such as "Hourly Workers often complain to management about not receiving all overtime compensation"—and that "Floor & Decor enforced a uniform policy or practice nationwide to deprive Hourly workers of earned overtime compensation"—it does not provide a single specific and plausible allegation concerning

-19-

any common nationwide practice.  Instead, Hammond's plausible allegations focus exclusively on the behavior of a single manager in the Nashville store.  (*See supra* at p. 5.)

When faced with this type of pleading, courts routinely dismiss or strike the collective action claim, and this Court should do the same.  *See, e.g.*, *Ecoquij-Tzep*, 2016 WL 3745685, at *5 (dismissing collective action claims pursuant to Rule 12(b)(6)); *Dyer*, 2013 WL 609307, at *3 (same); *Poggi v. Humana, Inc.*, No. 8:17-cv-453, 2017 WL 1322487, at *3 (M.D. Fla. April 17, 2017) (same); *Zarichny,* 80 F. Supp. 3d at 615, 624 (striking class allegations after finding that "the complaint leaves little doubt" that class allegations "are not viable").  At a bare minimum, the Court should dismiss or strike claims on behalf of any individuals who did not work under Donelson in the Nashville store because the Complaint's plausible allegations are limited to Donelson's actions.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Floor & Decor respectfully requests that the Court compel Hammond's individual claims to arbitration and dismiss the Complaint in its entirety.  In the alternative, Floor & Decor respectfully requests that the Court dismiss or strike Hammond's collective action claim.

-20-

Dated: March 5, 2020

Respectfully submitted,

/s/ *Lincoln O. Bisbee*

Lincoln O. Bisbee, admitted pro hac vice
Russell R. Bruch, admitted pro hac vice
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC  20001
Tel:     (202) 739-3000
Fax:     (202) 739-3001
lincoln.bisbee@morganlewis.com
russell.bruch@morganlewis.com

Keane A. Barger, TN Bar No. 33196
Katharine R. Cloud, TN Bar No. 019336
**RILEY WARNOCK & JACOBSON PLC**
1906 West End Avenue
Nashville, TN  37203
Tel:     (615) 320-3700
Fax:     (615) 320-3737
kbarger@rwjplc.com
kcloud@rwjplc.com

*Attorneys for Defendant Floor and Decor*
*Outlets of America, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served upon all counsel of record via the Court's ECF system on this the 5th day of March, 2020.

/s/ *Lincoln O. Bisbee*
Lincoln O. Bisbee