# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **GERMMA HAMMOND, on behalf of himself and all others similarly situated,** | ) ) ) | |
| | ) | **Case No: 3:19-cv-1099** |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **v.** | ) ) | **Collective Action** |
| | ) | |
| **FLOOR AND DECOR OUTLETS OF AMERICA, INC.,** | ) ) ) | |
| | ) | |
| **Defendant.** | | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS AND/OR STRIKE

Plaintiff Germma Hammond ("Hammond"), by and through counsel, hereby submits this memorandum of law in opposition to Defendant's Motion to Compel Arbitration or in the Alternative to Dismiss and/or Strike, filed March 5, 2020. *See* Dkt. 29 & 29-1 (collectively, the "Motion"). For the reasons set forth below, this Court should deny the Motion.

## I.   INTRODUCTION

Hammond is the victim of unlawful time shaving practices by Defendant, Floor and Decor Outlets of America, Inc. ("Defendant"). When Hammond complained to his store manager, Defendant did nothing to stop the time shaving, so he contacted the store's regional manager on several occasions. The regional manager likewise did not stop the time shaving and simply allowed the practice to continue. On December 10, 2019, Hammond filed this suit under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19, on behalf of himself and all similarly situated employees nationwide ("Plaintiffs"). *See* Dkt. 1. The Complaint details how Hammond and other hourly workers, including Warehouse Associates, Pro Services Associates, Customer Service Sales Associates, Sales Associate, Sales Consultants, and Overnight Stockers, were deprived of their rightful overtime compensation for all hours worked over 40 in a workweek when Defendant routinely cut time recorded in its timekeeping system, Kronos. *See id.* ¶¶ 2, 8–11.

Defendant's Motion seeks primarily to compel Hammond to arbitration based on an alleged agreement to arbitrate his claims. Notably, Defendant has not presented to this Court a signed arbitration agreement or acknowledgement form indicating that Hammond consented to arbitration or received a copy of an arbitration agreement. Nor has Defendant presented any credible evidence that Hammond ever knew of or received an arbitration agreement. Nonetheless, Defendant's Motion attempts to push beyond the bounds of Tennessee contract law by arguing, in essence, that because Defendant **believes** that Hammond **should have** received a copy of an Employee

Handbook ("Handbook") with an Arbitration Agreement ("Agreement"), the Court may infer that Hammond in fact **did receive** the Agreement and **consented** to waive all rights to a judicial forum. As discussed below, this Court has already rejected as a ground for compelling arbitration inferences about what an employer thinks in retrospect that it should have done. The Court should reject it again here.

Defendant's Motion also attempts to deprive Hammond and similarly situated opt-in Plaintiffs of their right to proceed in this action collectively under the FLSA, 29 U.S.C. § 216(b), through a series of disjointed alternative arguments. Defendant claims (1) the Court lacks personal jurisdiction over Defendant for the out-of-state Plaintiffs' claims; (2) all employees during the claims period "should have been" subject to binding arbitration agreements and should be preemptively dismissed; and (3) Plaintiffs not working in the Defendant's Nashville store have failed to state a claim on which the Court can grant relief.

Although Defendant presents various arguments for alternative relief, upon minimal scrutiny, none are valid. First, this Court has jurisdiction over the putative Plaintiffs' claims because, as Defendant admits, this Court has jurisdiction over the claims of the named Plaintiff and other Tennessee Plaintiffs, which is all that is required to establish personal jurisdiction in a collective action brought pursuant to the FLSA. Moreover, this Court should decline to extend the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017), to FLSA collective actions, as this extension is contrary to the text and broad remedial purposes of the FLSA. Second, Defendant presents no evidence in support of its sweeping claim that all employees were, in fact, subject to binding arbitration. Third, Defendant mischaracterizes the standards for conditional certification, which is an issue not properly before

the Court. Finally, Plaintiffs have more than adequately pleaded the nationwide FLSA collective action. This Court accordingly should deny Defendant's Motion in full.

## II.     RELEVANT FACTUAL BACKGROUND

Hammond worked for Defendant from October 2016 to November 2018 as a Warehouse Associate in Defendant's Nashville store (located in Antioch, Tennessee). Dkt. 33 ¶ 2. When he began working for Defendant, Hammond did not receive any orientation about company policies; he simply showed up and was immediately put to work. *Id.* ¶ 14. No one gave him a hard or electronic copy of the Company Handbook. *Id.* ¶ 15. Hammond did not sign an arbitration agreement. *Id.* ¶ 17. Nor did anyone in management ask Hammond to sign an arbitration agreement or ever mention to him an arbitration clause, policy, or agreement. *Id.* ¶ 16. And, of course, Defendant is unable to produce a signed arbitration agreement.

Defendant paid Hammond, and the opt-in Plaintiffs, an hourly wage with no commission or bonuses. *Id.* ¶ 2; Dkt. 1 ¶¶ 35–36. Hammond and Plaintiffs regularly worked over 40 hours per week, such as 6 shifts per week of 9 hours each day. Dkt. 33 ¶¶ 3–4. Their work time was recorded by Defendant's Kronos timekeeping system. *Id.* ¶¶ 5–7. Plaintiffs were not compensated for all hours worked.

During Hammond's employment with Defendant, the General Manager at the Nashville store was James "JJ" Donelson ("Donelson"), and the Regional Operations Manager was Samantha Remmick ("Remmick"). Dkt. 1 ¶¶ 43–44. Defendant's managers, including Donelson, would reduce the number of hours Hammond and Plaintiffs worked over 40 in a workweek in Kronos, depriving them of required overtime compensation. Dkt. 33 ¶ 10; Dkt. 1 ¶ 51. This time shaving ensured that Defendants would not pay Plaintiffs for all hours that they worked. Dkt. 1 ¶ 7.

Defendant implemented this unlawful time-shaving practice systematically in stores across the country. Hammond complained about the time-shaving practice to Donelson at least 6 times and to Remmick, the Regional Operations Manager, at least twice. Dkt. 33 ¶ 11. Neither Donelson nor Remmick disputed that Defendant was shaving hours in Kronos, and neither adequately investigated or tried to stop the practice. *Id.* ¶ 12; Dkt. 1 ¶ 69. On two occasions after Hammond complained, Defendant tacitly recognized that it was shaving Hammond's time by providing him with a little extra money. Dkt. 1 ¶¶ 57, 62. For example, around March or April 2018, Donelson gave Hammond a rapid! PayCard, which is like a debit card, with additional wages on it. Dkt. 1 ¶ 57. The amount on the PayCard was less than what Hammond would have received at 1.5 times his regular rate of pay; indeed, the amount on the PayCard bore no relationship to the actual wages Defendant owed to Hammond. Dkt. 1 ¶¶ 58, 63.

At all times relevant to the Complaint, Defendant applied this time shaving practice willfully and systematically to reduce costs nationwide. Dkt. 33 ¶ 10; Dkt. 1 ¶¶ 6–10. Defendant maintains uniform pay policies, practices, and procedures nationwide, including the use of the timekeeping system, Kronos. Dkt. 33 ¶ 10; Dkt. 1 ¶ 34. In addition, hourly workers often complained to management about not receiving all overtime compensation, Dkt. 1 ¶ 10, just as Hammond complained to Remmick, the Regional Operations Manager. Finally, at times, Hammond and other putative Plaintiffs discussed Defendant's time shaving practices. Dkt. 33 ¶ 13. After receiving these complaints, Defendant did not deny that time shaving practices existed, did not adequately investigate the employees' complaints, and simply allowed the times having practices to continue.

Since Hammond filed the Complaint, three opt-in Plaintiffs who worked in Defendant's stores in Tennessee, New Jersey, and Ohio have joined the case. *See* Dkt. 14-1, 15-1.

## III. ARGUMENT

### A. <u>Hammond Did Not Consent to Arbitration.</u>

Defendant's Motion first seeks an order compelling Hammond to arbitration based on the Agreement that was allegedly given to Hammond in the Handbook. The Court should deny the Motion. Hammond did not receive the Handbook, did not sign an arbitration agreement, and never agreed to forego his right to pursue his claims in court.

"An agreement to arbitrate is fundamentally a matter of consent." *GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019). "While ambiguities in the language of the agreement should be resolved in favor of arbitration . . . [a court will] not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). The Sixth Circuit turns to "state law to assess the existence of an agreement." *Id.*

"Under Tennessee law, '[a] valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance.'" *Amos v. Lincoln Prop. Co.*, No. 3:17-cv-37, 2017 U.S. Dist. LEXIS 93999, at *13 (M.D. Tenn. June 19, 2017) (quoting *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089, 2016 Tenn. App. LEXIS 939, at *7 (Tenn. Ct. App. Dec. 8, 2016)). Tennessee "recognizes the validity of unilateral contracts, in which acceptance is indicated by action under the contract." *Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 895 (M.D. Tenn. 2003).

Continued employment under a written agreement to arbitrate containing a unilateral-acceptance clause may indicate acceptance to an agreement and constitute adequate consideration. *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972–74 (6th Cir. 2007). But enactment

of an arbitration policy by itself is insufficient to demonstrate the existence of an agreement. *Lee v. Red Lobster Inns of Am., Inc.*, 92 F. App'x 158, 162 (6th Cir. 2004) (observing that a district court errs when placing "the burden on the employee to repeatedly object to a company's unilaterally adopted arbitration policy or risk being found to have agreed to it"). Rather, the employer must demonstrate by a preponderance of the evidence that the employee had "awareness of the existence and nature of" the agreement, such that his continued employment "constitutes sufficient acceptance of the agreement as to make it a valid contract." *Fisher*, 276 F. Supp. 2d at 895; *see also Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 934 (M.D. Tenn. 2003) (finding an arbitration agreement unenforceable where employees did not know they were signing an arbitration agreement, did not know the nature of the agreement, and where the contract was an unconscionable adhesion contract). If this Court finds that there is "a genuine issue of material fact as to the validity of the agreement to arbitrate," it will not compel arbitration. *Amos*, 2017 U.S. Dist. LEXIS 93999, at *15–16.

Tennessee law permits employees to enter into binding arbitration agreements through their continued employment, but only under specific circumstances. *See* Dkt. 29-1 at 7–8. Employees must, at a minimum, be aware "of the **existence** and **nature** of" the agreement "to make it a valid contract." *Fisher*, 276 F. Supp. at 895 (emphasis added). Hammond never signed, accepted, received, or knew about an agreement to arbitrate his claims. Dkt. 33 ¶¶ 14–17. Defendant has failed to show mutual assent to the Agreement and therefore its enforceability.

This Court issued a prior decision directly on point. In *Amos v. Lincoln Property Co.*, an FLSA misclassification case, this Court denied a motion to compel arbitration where an employee never signed an acknowledgment form, denied receiving an arbitration agreement, and the employer failed to put forward sufficient evidence that the employee had agreed to arbitrate her

claims. 2017 U.S. Dist. LEXIS 93999. There, the employer had an employee handbook which contained an appended arbitration agreement and acknowledgment form. *Id.* at *3. In support of its motion to compel arbitration, the employer submitted a declaration by a regional benefits manager claiming that "[a]t or near the time she joined [the employer], [the employee] was provided with [the handbook]." *Id.* at *3–4. The employer argued that the employee's receipt of the handbook, which stated that her "continued employment" constituted acceptance of the agreement, and her "repeated encounters with the arbitration agreement" demonstrated that she knew that she had agreed to arbitrate her FLSA claims. *Id.* at *13–14. The declaration, however, failed to include "any basis for [the regional benefits manager's] purported knowledge of [the employee's] receipt of the [handbook]." *Id.* at *4. The employer also claimed that the employee, a "business manager," had knowledge of the agreement based on her duties related to onboarding new employees. *Id.*

In opposition, the employee submitted her own declaration denying that she had ever received or was told about the handbook or arbitration agreement when she was hired and claiming that she did not sign an acknowledgment form. *Id.* at *7. Although the employee acknowledged her job duties had made her aware of an arbitration agreement about 18 months into her employment, she argued that the employer never told her the agreement applied to "business managers." *Id.* at *7–8.

This Court disagreed, denying the employer's motion to compel and concluding that the employee had raised "a genuine issue of material fact as to whether she was ever informed that her acceptance of an arbitration agreement was a condition of her continued employment with the company." *Id.* at *14. First, the Court looked to the employee's "sworn statement averring that she was not given, shown, or told about any Employee Handbook or arbitration policy when she was

hired," and that her employer had not "effectively communicated to her that the company's arbitration policy applied to her, specifically, or that her continued employment would constitute acceptance of an agreement to arbitrate all claims relating to her employment." *Id.* at *14–15. Second, this Court rejected the declaration of the regional benefits manager, concluding that his claim that the employee received the agreement "is completely unsupported by any evidence demonstrating the basis for [the regional benefits manager's] purported knowledge of the documents given to, and requested from, [the employee] at the time of her hiring." *Id.* at 16. Finally, the Court distinguished cases like *Fisher*, where the employer had provided "additional, competent evidence that the plaintiff did, in fact, know that the defendant's arbitration policy was a condition of his employment, such as incontrovertible evidence that the plaintiff had received a copy of the documents containing the arbitration policy or the plaintiff's own admission that he was aware of the policy and its application to him." *Id.* at *18. As such, this Court could not "conclude that [the employee's] decision to remain in her position as a business manager evidenced any intent to agree to arbitrate all disputes with [her employer]." *Id.* at *18.

Similarly, here, Hammond has submitted a sworn declaration that he never signed, accepted, received, or knew about an agreement to arbitrate his claims. Dkt. 33 ¶¶ 14–17. Defendant, however, erroneously asserts that Hammond accepted and consented to the arbitration agreement without adequate evidentiary support. *See* Dkt. 29-1 at 7 (starting analysis with the issue of whether Hammond's continued employment constitutes acceptance). Defendant's Motion only contains three facts that could form the basis for this assumption: (1) the existence of an arbitration provision appended to Defendant's Handbook; (2) a declaration from Joel Fox stating that Hammond, "like all Floor and Decor employees, received the handbook;" and (3) a checklist

purporting to show that Hammond received the Handbook. *See* Dkt. 29-1 at 3; Dkt. 30 Exs. 1–2. These facts are insufficient to show that Hammond consented to arbitration.

First, the mere existence of an arbitration agreement is insufficient to show that Hammond, or any other employee, assented to the agreement. Quite simply, "[t]his is not how contracts are formed." *Red Lobster*, 92 F. App'x at 162.

Second, Fox has no personal knowledge of Hammond's hiring or what documents Hammond received during onboarding. As his declaration makes clear, Fox's job is to make sure "**managers** responsible for hiring and onboarding at the Nashville store were properly versed in Floor & Decor's onboarding processes." Dkt. 30 ¶ 4 (emphasis added). Although Fox may know the Defendant's general policies and training for **managers**, he has no knowledge of Hammond's onboarding except what others have allegedly placed in Hammond's personnel file. Fox therefore has no personal knowledge of the "checklist" allegedly demonstrating that Hammond received the Handbook. Fox's conclusion that Hammond received the Handbook, "like all Floor and Decor employees," is accordingly pure supposition and utterly unreliable. *See Amos*, 2017 U.S. Dist. LEXIS 93999, at *16 (challenging foundation of declaration of regional benefits manager); *Camara v. Mastro's Rests., LLC*, No. 18-7167, 2020 U.S. App. LEXIS 8370, at *2–3, 6 (D.C. Cir. Mar. 17, 2020) (affirming denial of motion to compel arbitration under similar circumstances, where no signed agreement existed, the employer's affidavit supporting existence of agreement contained no personal knowledge, and "nothing in the record negate[d] [the employee's] sworn declaration that he was unaware of the agreement's existence").

Third, regarding this "checklist," it is an unreliable hearsay document that Defendant cannot present in an admissible form at trial. It is unsigned, undated, and contains no mention whatsoever of the Agreement. The "checklist" contains multiple boxes for various

acknowledgement forms, but it does not contain one for the "Acknowledgment of Arbitration Agreement." *See* Dkt. 30 Ex. 2. It also raises more questions than it answers. Although the document includes a checked box indicating that Hammond "completed, signed, and dated" the "Acknowledgement of Receipt of Employee Handbook & Code of Business Conduct & Ethics," Defendant failed to produce a signed acknowledgment form in support of its motion.[1] The checklist is accordingly an unverifiable hearsay document that only proves Defendant's personnel files are, like the "checklist" itself, unreliable. And, this checklist does not eliminate any genuine dispute of material fact regarding the validity of the Agreement. *See Camara*, 2020 U.S. App. LEXIS 8370, at *4 (affirming denial of motion to compel despite employee's online profile containing a "Y" for "Yes" under the "Arbitration Agreement" field).

The cases Defendant cites where courts found that continued employment constituted acceptance of an arbitration agreement are readily distinguishable, as all contain strong proof of the employee's actual knowledge of the arbitration agreement at issue. In *Seawright*, for example, the employer presented evidence that it implemented a new arbitration policy by (1) circulating a bulletin; (2) sending employees a letter stating, in relevant part, that "continuing employment with [the employer] means that you agree to resolve employment related claims against the company or another employee through this process instead of through the court system;" (3) proving that the employee received the bulletin and letter; and (4) holding group informational meetings explaining the program. 507 F.3d at 970–71. In addition, the employer showed that the employee "signed an attendance sheet acknowledging that she had attended an informational session and

---

[1] As the D.C. Circuit observed in *Camara*, "[t]he company's failure to produce an arbitration agreement containing Camara's signature after the company searched for such a document makes it more likely that no such document exists, which in turn makes it less likely that Camara agreed to arbitrate disputes." 2020 U.S. App. LEXIS 8370, at *6 (citing Fed. R. Evid. 401).

received a copy of the [arbitration agreement]." *Id.* at 971. Thus, the facts in *Seawright* are inapposite to the facts here.

*Fisher* is similarly distinguishable. In that case, the employee had actual knowledge that the defendant's arbitration policy was a condition of his employment, and the employer presented evidence that he received copies of the agreement. *Fisher*, 276 F. Supp. 2d at 895. In contrast, here, Hammond was unaware of the arbitration provision, and Defendant failed to proffer "incontrovertible evidence" of Plaintiff's awareness. *Amos*, 2017 U.S. Dist. LEXIS 93999, at *18. Thus, *Fisher* does not control.

In sum, Defendant's evidence that Hammond knew of the agreement is fatally deficient when compared to the evidence presented in *Fisher* and *Seawright*.[2] Hammond does not admit to receiving (let alone signing) all the paperwork at the start of his employment, and he has no knowledge of the Agreement. Defendant has failed to put forward any evidence to the contrary or witnesses with personal knowledge that Hammond received the Handbook or Agreement. Defendant has therefore failed to meet its burden to show that Hammond agreed to arbitrate his claims, and this Court should deny Defendant's Motion.

**B. None of Defendant's Arguments to Dismiss the Collective Action Have Merit.**

Defendant's Motion alternatively attempts to dismiss this collective action. As explained below, none of Defendant's arguments have merit.

_____

[2] *Johnson v. Long John Silver's Restaurants*, 320 F. Supp. 2d 656 (M.D. Tenn. 2004) (applying Missouri law), also fails to support Defendant's position. There, the employee could not remember signing the agreement. But (1) the employee admitted that he signed all paperwork during his orientation; (2) the defendant's witness had personal knowledge of the employee's orientation and "testified that [the employee] must have signed [an agreement];" and (3) there was no dispute that the employee, a restaurant manager, "knew that all employees had to sign [an arbitration agreement] before beginning work," as he had in fact explained the agreement to the parent of one of his minor employees. *Id.* at 664. In contrast, Hammond was unaware of an arbitration agreement and the Handbook altogether.

**1.** *This Court has Jurisdiction over Floor & Decor with Respect to the Claims of Out-of-State Opt-In Plaintiffs.*

Defendant first argues that this Court lacks personal jurisdiction with respect to the claims of out-of-state opt-in Plaintiffs and that it should dismiss or strike the claims[3] under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See* Dkt. 29-1 at 11. This Court should reject this argument.

There are two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* at 1780. Conversely, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

This Court should find that it has specific jurisdiction over out-of-state opt-in Plaintiffs' claims against Defendant.[4] Its arguments to the contrary are based on an extension of the Supreme

---

[3] Should the Court find that it lacks jurisdiction over the out-of-state opt-in Plaintiffs' claims, the appropriate remedy is transfer to a proper venue, not to dismiss or to strike the claims. 28 U.S.C. § 1631 provides that if the Court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." Here, district courts in Delaware or Georgia would have general jurisdiction over the collective claims stated in the Complaint, as Defendant is incorporated in Delaware and headquartered in Georgia. *See* Fox Decl. ¶ 3; *Roman v. Ashcroft*, 340 F.3d 314, 329 (6th Cir. 2003) (finding transfer to court of general jurisdiction in the interest of justice to prevent wasted expenses).

[4] Regarding general jurisdiction, Defendant has continuous and systematic contacts with the state, and Defendant should be "fairly regarded as at home" in Tennessee. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Top Tobacco, L.P. v. Abdelshahed*, No. 3:19-cv-00356, 2020 U.S. Dist. LEXIS 23453, at *4 (M.D. Tenn. Feb. 11, 2020). At all times relevant to the underlying Complaint, the Defendant has operated multiple stores and warehouses in Tennessee. Currently, Defendant

Court's holding in *Bristol-Myers* to FLSA collective actions. In *Bristol-Meyers*, 600 plaintiffs brought a mass tort action under California state law in California state court against a pharmaceutical firm. 137 S. Ct. at 1778. As only 86 of the plaintiffs were California residents, the firm challenged the California court's exercise of specific jurisdiction over those claims. *Id.* The Supreme Court agreed that the California courts lacked specific jurisdiction, as "the suit must arise out of or relate to the defendant's contacts with the forum," and the out-of-state plaintiff's claims lacked an "adequate link" with California. *Id.* at 1780–81.

Preliminarily, it is important to observe the limits of *Bristol-Myers*. *Bristol-Myers* did not usurp "settled principles" of personal jurisdiction. *Id.* at 1783. In addition, "*Bristol-Myers* specifically left open the question of whether the same restrictions should be imposed on the exercise of personal jurisdiction by a **federal** court." *Turner v. Utiliquest*, No. 3:18-cv-00294, 2019 U.S. Dist. LEXIS 224202, at *5 (M.D. Tenn. July 16, 2019). And to date, "[n]o circuit court of appeals has addressed the impact of *Bristol-Myers* on FLSA collective actions." *Warren v. MBI Energy Servs., Inc.*, No. 19-cv-00800-RM-STV, 2020 U.S. Dist. LEXIS 32383, at *15–16 (D. Colo. Feb. 24, 2020).

As a result, district "[c]ourts are . . . divided as to whether *Bristol-Meyers* applies to putative FLSA collective actions." *Id.* at *6. Generally, courts nationwide have followed one of two lines of cases: either *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 U.S. Dist. LEXIS 186535, at *4–6 (N.D. Cal. Nov. 10, 2017) (finding that the court had personal jurisdiction over the defendant as to the claims in a FLSA collective action by virtue of the specific jurisdiction established by the sole named plaintiff's claims), or *Maclin v. Reliable Reports of Texas, Inc.*, 314

---

has three locations in Nashville, Knoxville, and Memphis. *See* https://www.flooranddecor.com/view-all-stores (last accessed March 16, 2020).

F. Supp. 845, 850–51 (N.D. Ohio 2018) (finding *Bristol-Myers* applies to federal overtime claims because the court could not "envisage" the Fifth Amendment not applying in the same way as the Fourteenth Amendment). Although it is true that other courts in this Circuit have followed *Maclin* and found that *Bristol-Myers* applies to FLSA claims in the federal courts, *see, e.g.*, *Turner*, 2019 U.S. Dist. LEXIS 224202, at *5, this Court should reject those decisions. As discussed below, the *Swamy* line of cases is more persuasive

Defendant suggests that the nationwide weight of authority favors extending *Bristol-Myers*. Dkt. 29-1 at 15. This is incorrect. A review of the recent district court decisions reveals that courts nationwide consistently reject the proposed extension of *Bristol-Myers* to putative FLSA collective actions. *See Warren*, 2020 U.S. Dist. LEXIS 32383, at *15–19 ("[T]he Court finds that a broader reading of *Bristol-Myers* would frustrate Congress' goals in passing the FLSA."); *Turner v. Concentrix Servs.*, No. 1:18-cv-1072, 2020 U.S. Dist. LEXIS 16785, at *7–8 (W.D. Ark. Feb. 3, 2020) ("*Bristol-Myers* does not divest the Court's personal jurisdiction over [plaintiff's] 'similarly situated' collective action under the FLSA, regardless of where the opt-in plaintiffs may have suffered the alleged injury."); *Meo v. Lane Bryant, Inc.*, No. CV 18-6360 (JMA) (AKT), 2019 U.S. Dist. LEXIS 174552, at *36–37 (E.D.N.Y. Sep. 30, 2019) (same); *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB), 2019 U.S. Dist. LEXIS 80654, at *18 (E.D.N.Y. May 13, 2019) (same); *Hickman v. TL Transp., LLC*, 317 F. Supp. 3d 890, 899 n.2 (E.D. Pa. 2018) (collecting cases); *Swamy*, 2017 U.S. Dist. LEXIS 186535, at *4–6.

But the specific number of district courts that have followed *Swamy* over *Maclin* is not important. Ultimately, "[t]he battle of the string citations can have no winner." *Smith v. Wade*, 461 U.S. 30, 93 (1983) (O'Connor, J., dissenting). More important is the reasoning behind these

decisions. This Court should follow *Swamy*; only that line of cases aligns with the text and purposes of the FLSA while respecting due process concerns.

Unlike the state-law claims in *Bristol-Myers*, "the FLSA claims before the Court arise from a federal statute designed to address employment practices nationwide." *Seiffert v. Qwest Corp.*, No. CV-18-70-GF-BMM, 2018 U.S. Dist. LEXIS 211287, at *5 (D. Mont. Dec. 14, 2018). The FLSA's collective-action provision does not limit claims to in-state plaintiffs but allows employees to bring nationwide claims on behalf of themselves and those "similarly situated." 29 U.S.C. § 216(b). This ability to pursue nationwide collective actions is necessary to implement Congress's remedial purposes behind the FLSA. *Warren*, 2020 U.S. Dist. LEXIS 32383, at *15–19. As one court observed, "[a]pplying *Bristol-Myers* to FLSA collective actions 'would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights.'" *Mason*, 2019 U.S. Dist. LEXIS 80654, at *18–19 (quoting *Swamy*, 2017 U.S. Dist. LEXIS 186535, at *6). Indeed, to hold otherwise would undermine the intent of the FLSA to expressly authorize individuals to vindicate their rights with judicial efficiency. As the Supreme Court has long held, persons with similar claims under § 216(b) "should have the opportunity to proceed collectively" because this allows "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). Nationwide collective actions also serve judicial efficiency by providing "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id.*[5]

---

[5] Defendant reasons its interpretation "does not bar all nationwide FLSA collective actions" but requires them to "be filed in a jurisdiction where the employer is subject to general jurisdiction." Mot. 16, n. 10. Although Plaintiffs do not disagree that a collective action may be brought in a court with general jurisdiction, limiting collective actions only to such courts would effectively destroy most employees' ability to proceed collectively, as it would require plaintiffs to file suit in

Moreover, refusing to extend *Bristol-Myers* does not raise due process concerns. Defendant concedes that this Court has jurisdiction over it for purposes of the FLSA claims of the Tennessee Plaintiffs. Dkt. 29-1 at 16. And "[i]t is well settled that the original plaintiff in a collective action under the FLSA dictates a district court's analysis of specific jurisdiction." *Seiffert v. Qwest Corp.*, 2019 U.S. Dist. LEXIS 28658, at *11 (D. Mont. Feb. 22, 2019). As previously noted, *Bristol-Myers* did not usurp "settled principles" of personal jurisdiction. 137 S. Ct. at 1783. Finding personal jurisdiction over Hammond's claims accordingly "is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action" under previously settled principles. *Swamy*, 2017 U.S. Dist. LEXIS 186535, at *6; *see also Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 U.S. Dist. LEXIS 208561, at *7 (N.D. W.Va. Dec. 4, 2019) (finding that the sole named plaintiff in FLSA collective action is all that is required for specific jurisdiction); *Gibbs v. MLK Express Servs., LLC*, No. 2:18-cv-434-FtM-38MRM, 2019 U.S. Dist. LEXIS 78007, at *46 (M.D. Fla. Mar. 28, 2019) (noting that "[l]ike the defendant in *Swamy*, it is undisputed here that Amazon is subject to personal jurisdiction in Florida regarding the claims brought by the named Plaintiffs in this action, 'which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action.'").[6] This Court accordingly should deny Defendant's Motion.

---

a state that has **no** local plaintiffs and **no** connection to the underlying suit. Defendant's interpretation accordingly would cause, at best, similar cases to be brought nationwide in separate courts (harming judicial efficiency) or, at worst, many employees to choose not to seek judicial relief because of the prohibitive cost of initiating litigation in a foreign jurisdiction. *See Warren*, 2020 U.S. Dist. LEXIS 32383, at *20.

[6] "Moreover, from a practical standpoint, the ultimate certification issue could be delayed continually 'if the district court had to evaluate whether it possessed personal jurisdiction over each new opt-in plaintiff.'" *Warren*, 2020 U.S. Dist. LEXIS 32383, at *21 (quoting *Seiffert*, 2018 U.S. Dist. LEXIS 211287, at *4).

**2. *The Court Should Reject Defendant's Unsupported Attempts to Dismiss the Collective Action Based on Non-Existent Arbitration Agreements.***

Defendant next attempts to dismiss or to strike the collective action "because it encompasses individuals who are subject to binding arbitration agreements." Dkt. 29-1 at 16. In support of this Motion, Defendant again relies on its Fox Declaration for the proposition that "the vast majority of putative class members (if not all putative class members) are likely subject to Floor & Decor's arbitration agreement." *Id.* (citing Dkt. 30 ¶¶ 5, 9). Defendant argues that this single declaration supports excluding all potential collective action opt-in Plaintiffs. *Id.* at 17. Despite the sweeping relief sought by its Motion, however, Defendant emphasizes that it "is not asking the Court to evaluate the factual details of potential opt-in plaintiffs' arbitration agreements at this time." *Id.* at 18. Rather, the Defendant seeks a declaration that, as a matter of law, "individuals subject to valid arbitration agreements are dismissed or stricken from the putative collective action class." *Id.*

Defendant's Motion, at best, puts the cart before the horse. Defendant has failed to show that even one Plaintiff—Hammond—agreed to arbitrate his claims. But incredibly—without any discovery or further evidentiary support—Defendant now wants to strike all potential out-of-state opt-in Plaintiffs based on a single declaration of a witness with no personal knowledge of the only relevant issue: whether the out-of-state opt-in Plaintiffs in fact received and accepted Defendant's alleged arbitration agreement. This Court should summarily reject Defendant's argument because no evidence supports it and Defendant explicitly does not want to permit Hammond or this Court to gather any facts about it.

Although the legal basis for Defendant's requested relief is murky, Defendant's intent is clear: Defendant wishes to preempt the issue of conditional certification and the scope of opt-in notice before Plaintiffs raise it and—without providing evidentiary support—convince the Court

to adopt an inappropriately strict standard. As Defendant's argument mischaracterizes the parties' obligations at the conditional certification stage, the Court should deny its request.

Defendant cites *In re JPMorgan Chase & Co.*, 916 F.3d 494, 498, 501 (5th Cir. 2019), and *Bigger v. Facebook, Inc.*, 947 F. 3d 1043, 1050 (7th Cir. 2020), to claim that "individuals subject to arbitration agreements should not receive notice of an FLSA collective action." Dkt. 29-1 at 16. What both cases require as a condition precedent, however, is a "valid" arbitration agreement. *Id.* To this end, **Defendants have the burden to prove the existence of an agreement**. In *Bigger*, for example, the Seventh Circuit held that when a

> defendant opposing the issuance of notice alleges that proposed [collective action] recipients entered arbitration agreements waiving the right to participate in the action, a court may authorize notice to those individuals unless . . . **after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice**.

*Id.* at 1147 (emphasis added); *accord JPMorgan Chase*, 916 F.3d at 502–03 (holding that "an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee"). Even accepting *arguendo* that Defendant's case law applies here, Defendant's request is premature and unsupported by evidence in the record, as Defendant explicitly does not want discovery about and has presented no evidence of a valid arbitration agreement.

None of Defendant's remaining cases provide further support for its position. Although any individual Plaintiff may eventually have to "show that there is a genuine issue of material fact as to the validity of the arbitration agreement," *Wilks v. Pep Boys*, 241 F. Supp. 2d 860, 862–63 (M.D. Tenn. 2003), the Defendant must first demonstrate the existence of a presumptively valid agreement. Defendant has failed to do so. *See Camara*, 2020 U.S. App. LEXIS 8370, at *6.

This Court should not allow Defendant to shift the burden. At the conditional certification stage (which is not yet before the Court), a plaintiff must show that employees in the purported class are similarly situated. Settled Sixth Circuit precedent dictates that this burden is "fairly lenient" and "typically results in 'conditional certification' of a representative class." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2007) (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). "Although a court may consider the factual record developed to date when determining whether Plaintiff has met his evidentiary burden, a court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations at this first stage." *Turner*, 2019 U.S. Dist. LEXIS 224202, at *9.[7]

In short, nothing in this stage requires Plaintiffs to rebut Defendant's unsupported factual allegations about purported arbitration agreements. This Court therefore should deny Defendant's Motion.

### 3. *Plaintiffs have Stated a Plausible Claim which Supports a Nationwide Collective Action Under the FLSA.*

Defendant finally argues that Plaintiffs have failed to adequately plead a collective action under Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure. Defendant alleges that the complaint "does not provide a single specific and plausible allegation concerning any common nationwide practices." Dkt. 29-1 at 19-20. This argument is wholly without merit.

---

[7] "[C]ourts consistently hold that agreements barring lawsuits, such as binding arbitration agreements, are irrelevant to conditional certification because the agreements implicate the merits of the dispute." *Sawyer v. Health Care Sols. at Home, Inc.*, No. 5:16-cv-5674, 2018 U.S. Dist. LEXIS 70152, at *10 (E.D. Pa. Apr. 25, 2018) (deferring consideration of the validity of collective action waivers in FLSA suit); *see also Maddy v. GE*, 59 F. Supp. 3d 675, 685 n.7 (D.N.J. 2014) (noting that the fact "[t]hat some service technicians have signed arbitration agreements does not preclude conditional certification of all service technicians across the United States").

Plaintiffs recognize that "a complaint alleging an FLSA collective action on behalf of oneself and others similarly situated is subject to pleading standards," *Roberts v. Corr. Corp. of Am.*, 2015 U.S. Dist. LEXIS 82575, at *30 (M.D. Tenn. June 25, 2015), and that the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

But the FLSA also authorizes a single employee to bring a suit on behalf of himself and others who are similarly situated. 29 U.S.C. § 216(b). "Therefore, the FLSA's text expressly provides for complaints with allegations lacking additional factual detail as to the identity of other similarly situated employees at the pleading stage." *Roberts*, 2015 U.S. Dist. LEXIS 82575, at *30. Moreover, employees may be similarly situated even if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1009 (6th Cir. 2016) (quoting *O'Brien v. Ed. Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).

Here, the Complaint easily meets the required plausibility standard. It sets forth how Hammond and Plaintiffs were the victims of Defendant's time-shaving practice and that Defendant implemented uniform pay policies, practices, and procedures nationwide during the relevant time period, including use of the Kronos timekeeping system. *See* Section II, *supra*; Dkt. 1 ¶¶ 34, 51, 69. It further details how, when Hammond complained to Defendant's managers, including the Regional Operations Manager, Remmick, they did not deny the practice. Dkt. 33 ¶¶ 11, 12; Dkt. 1 ¶¶ 66-71. It is thus more than plausible that all Plaintiffs in this action have been victims of Defendant's time-shaving practices in violation of the FLSA. *Monroe*, 815 F.3d at 1009.

For the foregoing reasons, this Court should deny Defendant's Motion.

Dated: March 19, 2020                    Respectfully submitted,

                                         /s/ *Charles P. Yezbak, III*
                                         Charles P. Yezbak, III (TN BPR #18965)
                                         /s/ *N. Chase Teeples*
                                         N. Chase Teeples (TN BPR #032400)
                                         YEZBAK LAW OFFICES PLLC
                                         2002 Richard Jones Road
                                         Suite B-200
                                         Nashville, TN 37215
                                         Tel.: (615) 250-2000
                                         Fax: (615) 250-2020
                                         yezbak@yezbaklaw.com
                                         teeples@yezbaklaw.com


                                         /s/ *Gregory K. McGillivary*
                                         Gregory K. McGillivary (D.C. Bar 411029)*
                                         /s/ *Diana K. Nobile*
                                         Diana K. Nobile (D.C. Bar 997725)*
                                         McGILLIVARY STEELE ELKIN LLP
                                         1101 Vermont Avenue NW
                                         Suite 1000
                                         Washington, D.C. 20005
                                         Tel.: (202) 833-8855
                                         Fax: (202) 452-1090
                                         gkm@mselaborlaw.com
                                         djn@mselaborlaw.com

                                         *Admitted *Pro Hac Vice*

                                         *Attorneys for Plaintiff Germma Hammond*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration or in the Alternative to Dismiss and/or Strike* has been filed via the Court's ECF filing system on March 19, 2020, which sent a copy to the following counsel of record:

Lincoln O. Bisbee
Russell R. Bruch
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20001
Tel: (202) 739-3000
Fax: (202) 739-3001
lincoln.bisbee@morganlewis.com
russell.bruch@morganlewis.com

Keane A. Barger
Katharine R. Cloud
**RILEY WARNOCK & JACOBSON PLC**
1906 West End Avenue
Nashville, TN 37203
Tel: (615) 320-3700
Fax: (615) 320-3737
kbarger@rwjplc.com
kcloud@rwjplc.com

*Attorneys for Defendant*

/s/ Gregory K. McGillivary
Gregory K. McGillivary