IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GERMMA HAMMOND, on behalf of himself and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FLOOR AND DECOR OUTLETS OF AMERICA, INC., <br><br> Defendant. | Case No. 3:19-cv-01099 <br> Judge Aleta A. Trauger |

## MEMORANDUM AND ORDER

Plaintiff Germma Hammond brings this collective action on behalf of himself and others similarly situated nationwide against Floor and Decor Outlets of America, Inc. ("F&D"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, for unpaid overtime compensation. Currently pending are (1) the plaintiff's Motion for Conditional Certification of a Collective Action and Expedited, Nationwide, Court-Supervised Notice to Putative Plaintiffs ("Motion to Certify") (Doc. No. 51); (2) three Motions to Dismiss, filed by F&D, seeking dismissal of the claims asserted by three different opt-in plaintiffs on the basis that they have signed arbitration agreements and are required to arbitrate their claims (Doc. Nos. 84, 86, 89); and (3) the plaintiff's Motion to Stay Motions to Dismiss Opt-In Plaintiffs or, in the Alternative, for an Extension of Time to Respond (Doc. No. 100).

Only the latter motion has been fully briefed by the parties, as they are embroiled in a dispute as to which motion the court should consider first, whether the Motion for Conditional Certification or the Motions to Dismiss, and both have sought extensions of the deadline for

responding to the other's motion(s). For the reasons set forth herein, the plaintiff's Motion to Stay will be granted in part and denied in part, and the court will enter a new briefing schedule for the other pending motions.

I.     PROCEDURAL BACKGROUND

Hammond filed the Collective Action Complaint (Doc. No. 1) in December 2019. Several Notices of Consent to Become Party Plaintiffs were filed in the ensuing months, including notices by Fierce Taylor, Edgar Cardona, and Craig Cheuvront.[1] Rather than an answer, the defendant filed a Motion to Compel Arbitration on March 5, 2020, arguing that Hammond had entered into a binding agreement to arbitrate any employment-related disputes, including FLSA claims, when he began his employment with F&D. The court initially denied that motion without prejudice, finding a material factual dispute as to whether the plaintiff had actually agreed to arbitrate. (Doc. No. 42.) Following an evidentiary hearing, the court resolved that dispute in favor of the plaintiff, Germma Hammond, and denied with prejudice the defendant's Motion to Compel Arbitration. (Doc. No. 97.) Meanwhile, however, the plaintiff had filed his Motion to Certify (Doc. No. 51), and the defendant had filed the Motions to Dismiss the claims brought by opt-in plaintiffs Taylor, Cardona, and Cheuvront on the grounds that these individuals, too, had signed binding arbitration agreements.

Shortly after the evidentiary hearing and ruling on the Motion to Compel Arbitration, the court reset the deadline for the defendant to respond to the Motion to Certify but left intact the time for the plaintiff to respond to the Motions to Dismiss. The plaintiff filed his Motion to Stay and supporting Memorandum (Doc. Nos. 100, 101), requesting that the court stay briefing on the

---

[1] Notices by at least two additional opt-in plaintiffs were filed, but the claims by those plaintiffs have been dismissed, either voluntarily or on summary judgment. (*See* Doc. Nos. 94, 99.)

Motions to Dismiss until after a ruling on the pending Motion to Certify. The defendant then filed its Response in Opposition to the plaintiff's Motion to Stay (Doc. No. 106), along with a motion for extension of its deadline for responding to the Motion to Certify (Doc. No. 105). The court entered an Order granting the latter motion, indicating that it would reset the dates for a response and reply after ruling on the plaintiff's Motion to Stay. (Doc. No. 108.)

**II. THE PARTIES' POSITIONS**

The Motions to Dismiss are premised upon the defendant's contention that two of the opt-in plaintiffs, Taylor and Cardona, actually executed Arbitration Agreements, and the third, Cheuvront, had received a copy of the Employee Handbook and Arbitration Agreement and, by continuing to work for F&D, signaled his agreement to arbitrate. Hammond argues that staying the Motions to Dismiss until after the court has the opportunity to rule on the Motion to Certify and to "determine[] the scope of the collective following the opt-in period" (Doc. No. 101, at 1, 4) would promote judicial economy, efficiency, and fairness. He also argues that the filing of the Motions to Dismiss does not deprive the court of jurisdiction to consider the Motion to Certify first. Pointing to opinions from other courts facing related issues, he argues that arbitration is an affirmative defense, consideration of which is not appropriate at the class certification stage and does not affect whether notice is given to potential class members. (Doc. No. 101, at 4.)

Regarding judicial economy and efficiency, he argues that a stay of briefing on the Motions to Dismiss would allow counsel for the plaintiff to "consolidate responses and objections to arbitration agreements for groups of opt-in plaintiffs in similar circumstances," which, in turn, would permit the court to rule more efficiently. (*Id.* at 1–2.) He notes that it is likely that putative opt-in plaintiffs are likely to fall into at least three categories: (1) a set of employees, like Hammond and Cheuvront, for whom the defendant does not have a signed arbitration agreement; (2) a set of employees, like Taylor and Cardona, who, the defendant claims, signed an arbitration

provision electronically; and (3) a set of individuals who affirmatively opted out of arbitration. Staying the Motions to Dismiss, the plaintiff claims, would give plaintiff's counsel the opportunity to gather information from opt-in plaintiffs to ascertain exactly "how many arbitration scenarios exist" and "to conduct focused and efficient discovery related to any information needed from Defendant on the alleged arbitration agreements or processes." (Doc. No. 101, at 6.) This procedure, he claims, would allow counsel to consolidate objections to arbitration by current and future opt-in plaintiffs and, at the same time, to voluntarily dismiss claims brought by opt-in plaintiffs who are clearly subject to arbitration, so that their claims can proceed in individual arbitration without court involvement.

Regarding fairness and the prevention of prejudice, the plaintiff argues, first, that he is prejudiced in responding to the Motions to Dismiss, because, while the defendant has produced agreements that purport to show the electronic signatures of Taylor and Cardona, the plaintiff has not been permitted to conduct any discovery into the process by which their electronic signatures were obtained and whether the opt-in plaintiffs knowingly waived their right to a jury trial and assented to arbitration. The plaintiff believes that the agreements may be unenforceable, given the manner in which the electronic signatures were obtained, but, he argues, he will need discovery to verify or dispel that impression.[2] He claims that he will be in a better position to address the arguments asserted in the Motions to Dismiss after a ruling on the Motion to Certify and after the plaintiff has been permitted to conduct discovery more generally into F&D's practices for obtaining electronic signatures and concerning the on-boarding process.

---

[2] It is not clear why the opt-in plaintiffs themselves could not supply counsel with all the information needed to respond to the Motions to Dismiss.

The plaintiff also expresses concern about potential prejudice to Taylor and Cardona, should they "file full-throated oppositions" to the Motions to Dismiss aimed at their claims. This concern arises from a fee-shifting provision in the arbitration agreements that they are alleged to have signed electronically, which provides in pertinent part that, if a party "institute[s]" any legal action and then upon notice "refuse[s]" to proceed in arbitration, the "responding party," F&D, "shall be entitled to recover from the initiating party all costs, expenses, and attorney's fees incurred as a result of such action." (Docs. Nos. 88-1, at 4, 88-3, at 4.) In a nutshell, this provision means that, if the opt-in plaintiffs "refuse" to arbitrate by bringing good-faith defenses to the creation and enforceability of the arbitration agreement but their objections are ultimately unsuccessful, they risk being saddled with attorney's fees in an amount likely to far exceed any actual damages to which they might be entitled, even if they ultimately prevail in their FLSA claims against F&D in individual arbitrations. The plaintiff believes that the fee-shifting provision is unconscionable and unenforceable, but he posits that Taylor and Cardona should not be required to risk the court's disagreement on that issue in order to bring good-faith objections to arbitration. Alternatively, the plaintiff requests that the court rule on this issue separately, "allowing time for Defendant to brief the issue if necessary." (Doc. No. 101, at 12.) Finally, in the event the court is not inclined to grant the Motion to Stay, the plaintiff requests a fourteen-day extension of the deadline for responding to the Motions to Dismiss, to permit counsel to discuss this risk with their clients and to conduct limited additional investigation into the circumstances surrounding the alleged formation of the arbitration agreements.

In response, F&D argues that opt-in plaintiffs are party plaintiffs and that, consequently, the Federal Arbitration Act ("FAA") is "clear about what must—and cannot— happen next." (Doc. No. 106, at 1.) Specifically, F&D argues that the FAA makes it clear that, once a motion to compel

arbitration has been filed, the court has no choice but to stay proceedings and rule on the motion to compel arbitration before doing anything else. (*Id.* at 2 (citing *Southard v. Newcomb Oil Co., LLC*, No. 19-5187, 2019 WL 8111958, at *4 (6th Cir. Nov. 12, 2019)).) It also argues that the question of whether to send notice to other potential opt-ins (who may well also be bound by arbitration agreements) is unrelated to F&D's motions to compel to arbitration those party-plaintiffs who have already opted in and are subject to such agreements. F&D denies that there is any efficiency to be gained by addressing the Motion to Certify first. To the contrary, it claims that the plaintiff's proposal "would *undermine* efficiency by delaying ruling on issues that could affect the entire putative class." (Doc. No. 106, at 6.)

F&D then devotes much of its brief to the issue of certifying a collective action, arguing that (1) the court must consider the fact that Hammond is not similarly situated to hourly employees who, unlike him, are bound by arbitration agreements; (2) individual mini-trials are likely to be required to determine whether each opt-in plaintiff who challenges his or her arbitration agreement is nonetheless bound by it, meaning that "ancillary arbitration litigation could swallow this action (*id.* at 9); (3) this court should follow the lead of the Fifth and Seventh Circuits—the only appellate courts to have issued opinions on the topic—to find that it does not have discretion to send notice, or to require that notice be sent, to F&D employees who are bound by arbitration agreements and that F&D has "a right to present evidence of class members who cannot receive notice" (*id.* at 10); and (4) it is improper for the plaintiff to "enlist this Court's aid in identifying potential litigants (whether or not they are 'potential plaintiffs' eligible to join this action)," because "[s]imilarly situated employees must be identified before notice, not after" (*id.* at 12). Finally, it contends that, if the court permits the plaintiff to oppose the arbitration motions, despite having missed the deadline for doing so, it should again extend F&D's deadline for responding to the Motion to

Certify, basically requiring the plaintiff to respond to the Motions to Dismiss before F&D is required to respond to the Motion to Certify, because the individual opt-in plaintiffs' "positions concerning arbitration are directly relevant to the question of whether they are similarly situated" to Hammond or to "thousands of putative class members." (*Id.* at 13.)

In his Reply, Hammond generally argues that the defendant's position is not supported by the law of the Sixth Circuit, which is not likely to follow the course charted by the Fifth and Seventh Circuits regarding the propriety of providing notice of a collective action to employees who might be bound by arbitration agreements, that F&D will ultimately have to respond to the Motion to Certify even if the court rules that the three opt-in plaintiffs are subject to binding arbitration agreements, and that F&D's claim that it will be prejudiced by having to respond to the Motion to Certify before the plaintiff responds to the later-filed Motions to Dismiss is unsupportable. He also contends that the Sixth Circuit cases on which F&D relies are distinguishable, and he reiterates the argument that Taylor and Cardona will be prejudiced by being required to respond first, in light of the fee-shifting issue raising in his initial Memorandum. The plaintiff devotes another three pages to arguing that the fee-shifting provision is unenforceable. (Doc. No. 111, at 12–15.)

## III. DISCUSSION

As may be apparent from the summary of the briefing, the parties' arguments largely offer previews of what they can be expected to argue at later stages of the litigation. They are not, for the most part, directly addressed to the question of simply briefing the motions that have already been filed. Moreover, as the plaintiff points out in his Reply, the order in which briefing occurs is not necessarily determinative of the order in which the court will rule on the various motions.

In *Southard*, an unreported Sixth Circuit opinion upon which the defendant relies, the defendant had removed the case to federal court on the basis of federal question jurisdiction, as

the plaintiff asserted a claim under the FLSA alongside state law claims. Shortly after removal, the plaintiff filed an amended complaint omitting his FLSA claim, and, on the same day, the defendant filed a motion to dismiss or to compel arbitration or, alternatively, to stay the case pending individual arbitration ("arbitration motion"). Shortly after that, the plaintiff filed a motion to remand to state court, a motion to stay briefing on the arbitration motion and a motion to expedite briefing on the motion to stay. The defendant, the same day, filed a motion to stay briefing on the motion to remand until after a decision on the arbitration motion. *Southard*, 2019 WL 8111958, at *1. The district court effectively ruled on all of the motions at once, granting the motion to remand, denying as moot the motion to stay briefing on that motion, and rejecting the defendant's claim that the court was required to rule on the arbitration motion before the motion to remand. *Id.* at *2.

The Sixth Circuit, applying an abuse of discretion standard, held that the district court erred in failing to address the arbitration motion before the motion to remand, since the dismissal of the federal claim had not actually worked to deprive the court of subject matter jurisdiction. Rather, the court clearly had federal question jurisdiction at the time of removal and then chose not to exercise supplemental jurisdiction over the state-law claims once the FLSA claim had been dismissed. "Under these circumstances," the Sixth Circuit held that, under the FAA, the district court was required to address the defendant's arbitration motion first, because, "once a motion to compel arbitration is filed, 'the district court [must] refrain from further action' and must 'first determine whether there is a written agreement to arbitrate between the parties[.]'" *Id.* at *4 (quoting *Midwest Mech. Contractors, Inc. v. Commonwealth Const. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)).

*Southard* does not actually address the order of *briefing* the various motions, which was apparently not an issue raised on appeal. Even if it had, *Southard*, which was limited to the particular circumstances presented in that case, is not precisely on point. There, the question was whether the named plaintiff should be compelled to arbitrate. Here, the court has already determined that Hammond, the sole named plaintiff, is not subject to a binding arbitration agreement, as a result of which his claims will be permitted to proceed in this court regardless of what happens to the three opt-ins (or, for that matter, how the court rules on the Motion to Certify).

On the other hand, that fact does not justify an indefinite delay in ruling on the Motions to Dismiss[3] directed to the three opt-ins who, F&D claims, are subject to binding arbitration. Moreover, whether the plaintiff needs discovery in order to respond to the Motions to Dismiss is a separate question that could have been raised in a separate motion if the plaintiff indeed feels that he needs such discovery.

Regarding the other arguments specifically raised by the plaintiff, the purported efficiencies that might be gained by the plaintiff in attempting to address responses and objections to arbitration agreements for a putative collective of other opt-in plaintiffs in similar circumstances does not justify delaying resolution of currently pending motions to enforce specific arbitration

---

[3] The Motions to Dismiss are effectively motions to compel arbitration, as the relief they seek is, in part, an order compelling the opt-in plaintiffs to arbitrate. (*See, e.g.*, Doc. No. 85, at 5 ("[T]his Court should enforce the agreement between Taylor and Floor & Decor, and require the parties to arbitrate this dispute according to the terms of the Agreement.").) *See also Taylor v. Pilot Corp.*, 697 F. App'x 854, 861 (6th Cir. 2017) (noting that in previous Sixth Circuit opinions, "the defendants' motions to dismiss functioned as requests to compel arbitration" where, "[i]n each case, the court faced a motion to dismiss claims that were brought (1) by an actual party to the litigation; (2) who had allegedly agreed in writing to arbitrate; but (3) refused to do so" (citing *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 502 (6th Cir. 2011); *Simon v. Pfizer Inc.*, 398 F.3d 765, 772 (6th Cir. 2005)).

agreements against individuals who have already opted in. In addition, the potential prejudice to those opt-in plaintiffs arising from the fee-shifting provisions in the arbitration agreements they are alleged to have signed is likewise not an issue relevant to the question of the order of briefing, the order of decision making, or to the decision making itself.[4] Finally, it is premature at this juncture to address the parties' other arguments insofar as they address the merits of the pending Motions to Dismiss and Motion to Certify.

In sum, none of the arguments raised by either party is particularly persuasive. The Motion to Certify has been pending since June 17, 2020. Briefing on it was stayed pending resolution of the motion to compel the named plaintiff to arbitration and the plaintiff's Motion to Stay. Further delay is not warranted by the Motions to Dismiss directed toward the three opt-ins, as a ruling on the Motion to Certify will be required regardless of how the court rules on the Motions to Dismiss. Moreover, additional delay is potentially prejudicial to future opt-in plaintiffs for whom the statute of limitations continues to run. On the other hand, the court has an obligation to promptly address the Motions to Dismiss under the FAA. Accordingly, the plaintiff's Motion to Stay will be granted in part and denied in part, and both parties will be ordered to respond to the other pending motions.

## IV.     CONCLUSION AND ORDER

The Motion to Stay (Doc. No. 100) is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** insofar as it seeks to stay briefing on the Motions to Dismiss until after resolution of the Motion to Certify, but **GRANTED** to the extent it seeks an extension of the plaintiff's deadlines for responding to the Motions to Dismiss. The court sets the following briefing

---

[4] The fee-shifting provision strikes the court upon cursory review as unconscionable, but resolution of that question must be left for another day. In particular, if the arbitration agreements are found to be valid, it appears that the enforceability of the fee-shifting provision within the arbitration agreement will initially be within the purview of the arbitrator rather than the court.

schedule:

1. The defendant shall respond to the Motion to Certify (Doc. No. 51) by or before Friday, August 28, 2020. The plaintiff may file an optional Reply by or before Friday, September 4, 2020.

2. The plaintiff shall respond to the Motions to Dismiss (Doc. Nos. 84, 86, 89) by or before Friday, August 28, 2020. The defendant may file an optional Reply by or before Friday, September 4, 2020. Because courts evaluating motions to compel arbitration "treat the facts as they would in ruling on a summary judgment motion," *De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 792 (S.D. Ohio 2019) (citation omitted), the court will consider any declarations or affidavits the plaintiff files with his opposition, as well as the declarations already filed by the defendant, to determine whether material factual disputes exist as to the formation of agreements to arbitrate.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge