**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GERMMA HAMMOND, on behalf of himself and others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:19-cv-01099** |
| **FLOOR AND DECOR OUTLETS OF AMERICA, INC.,** | ) ) ) | **Judge Aleta A. Trauger** |
| **Defendant.** | ) ) | |

## MEMORANDUM and ORDER

Four days prior to its deadline for providing to counsel for the plaintiff the full names, last known addresses, and email addresses of employees entitled to receive notice of this collective action, defendant Floor and Decor Outlets of America, Inc. ("F&D") has filed an Expedited Motion to Stay Notice for Out-of-State Individuals, to Exclude Notice to Individuals Who Worked Three or Fewer Total Days, and for an Accelerated Telephonic Hearing. (Doc. No. 167.) Also pending are F&D's Request for a Telephonic Hearing or, In the Alternative, Motion for Leave to File a Reply (Doc. No. 171), and the plaintiff's Motion for Approval of Revised Notice (Doc. No. 166).

For the reasons set forth herein, F&D's motions will be denied, and the plaintiff's motion will be granted.

## I.    STATEMENT OF THE CASE

On May 13, 2020, the court entered a Memorandum and separate Order denying F&D's motion to dismiss or strike portions of the collective action Complaint, which was based on F&D's argument that, under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California* ("*BMS*"), 137 S. Ct. 1773, 1787 (2017), the court lacks personal jurisdiction over the

defendant with respect to claims brought by opt-in plaintiffs who do not reside in Tennessee and whose claims have no connection to Tennessee. (Doc. Nos. 40, 41.) In finding that it does have jurisdiction over those claims and that *BMS* does not apply to FLSA collective actions, the court recognized that no circuit court of appeals had yet addressed the question of whether *BMS* applies to FLSA collective actions and that the district courts nationwide are split on the question. (Doc. No. 42, at 24 (collecting cases).) That remains true.

On August 19, 2020, however, the Sixth Circuit granted the plaintiff in an unrelated FLSA action leave to pursue an interlocutory appeal of a decision by the Western District of Tennessee reaching the opposite conclusion. *Canaday v. Anthem Cos.*, 439 F. Supp. 3d 1042, 1049 (W.D. Tenn. 2020), *interlocutory app. granted, In re: Canaday*, No. 20-0504 (6th Cir. Aug. 19, 2020).[1] Briefing in the appellate case was originally supposed to have been concluded by early December, but the dates have now been extended, and briefing is not anticipated to be concluded until early January. *See Canaday v. The Anthem Cos.*, No. 20-5947 (6th Cir. Oct. 30, 2020) (briefing letter).

After much litigation in the present case on the question of whether the plaintiff and/or several opt-in plaintiffs should be compelled to arbitration, the court entered an order on November 3, 2020 conditionally certifying a nationwide collective action, defining membership in the collective action, and setting various related deadlines, including a deadline for F&D to provide the names and contact information for current and former employees entitled to receive notice of the collective action and a date by which the plaintiff should submit to the court an amended notice to class members and motion for approval of such amended notice. (Doc. No. 165.) Only after entry of this order did F&D bring to the court's attention the pending appeal in *Canaday v. Anthem*

---

[1] The timing of the Sixth Circuit's granting permission to pursue an interlocutory appeal in *Canaday* certainly calls into question the rationale behind the defendant's decision to wait until now to file its "Expedited Motion."

*Companies.*

In its Expedited Motion, F&D asks that the court stay notice to out-of-state individuals—and toll the statute of limitations for those individuals—until the Sixth Circuit has issued an opinion in *Canaday* and resolved the question of whether *BMS* applies to FLSA collective actions. Incidentally, F&D also asks the court to excuse it from supplying contact information for former employees who otherwise are within the definition of the collective but (1) were hired and terminated on the same day or (2) worked three or fewer total days (a group that would seem to include individuals who were hired and fired the same day).

The plaintiff filed his Expedited Response to the motion, asking that the court summarily deny the defendant's motion on the basis that it is unnecessary, prejudicial, and untimely. (Doc. No. 170.)

The defendant has not filed a response to the plaintiff's Motion for Approval.[2]

## II.   LEGAL STANDARD

A district court has broad discretion to stay all proceedings pending the resolution of independent proceedings elsewhere. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Such power is incidental to the power inherent in every court to control the disposition of the cases on its docket. *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis*, 299 U.S. at 254). While the courts within this circuit do not appear to have adopted a precise test for determining whether to issue a stay, "courts have noted a number of relevant considerations," the "most important" of which "is the balance of hardships; the moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by

---

[2] In the Order granting conditional certification, the court instructed the defendant that no response was necessary unless it had a "new, previously unraised basis for objection." (Doc. No. 165, at 2.)

a stay." *Int'l Bhd. of Elec. Workers v. AT&T Network Sys. (Columbia Works)*, 879 F.2d 864 (Table), 1989 WL 78212 , at *8 (6th Cir. 1989) (citing *Landis*, 299 U.S. at 255 (1936); *Ohio Env't. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977)). "The district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources." *Id.*; *see also F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 628 (6th Cir. 2014) (quoting *Int'l Bhd.*, 1989 WL 78212 , at *8). Additionally, a stay should not be for an "indefinite duration in the absence of pressing need." *Landis*, 299 U.S. at 255. "A court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liability without undue delay." *Ohio Env't. Council*, 565 F.2d at 396.

## III.  DISCUSSION

### A.  Whether to Grant a Stay

F&D argues that the court should issue the requested stay because: (1) a stay is in the interest of judicial economy; (2) F&D will be significantly prejudiced if a stay is not entered, and there will be no way to cure that prejudice; and (3) a stay will not prejudice the public or the putative opt-in plaintiffs. The court is not persuaded.

#### 1.  Judicial Economy

First, with respect to the interest of judicial economy, F&D insists that any litigation activity involving out-of-state opt-in plaintiffs—including discovery and decertification—when the Sixth Circuit may "soon" confirm that those individuals cannot participate in this case "would be rendered entirely moot if the Sixth Circuit holds that those opt-ins cannot participate in the case." (Doc. No. 168, at 6.) It argues that the more efficient approach is to toll the statute of limitations for the out-of-state putative opt-ins but to delay sending notice and undertaking active litigation until, and if, "the Sixth Circuit rules that they can participate in this case." (*Id.*) F&D also insists that the pending appeal in *Canaday* will "have a dispositive impact on the potential claims

of out-of-state individuals." (*Id.*) A decision that the court lacks personal jurisdiction over F&D with respect to those individuals, rendering those individuals ineligible to participate in this case, would, according to F&D, "result in significant confusion and prejudice to out-of-state individuals, who would be invited to join this case only to later learn that they are ineligible to participate in the case." (*Id.*)

At first blush, this argument appears quite logical. As the plaintiff points out, however, a ruling in *Canaday* that the jurisdictional holding in *BMS* does apply to FLSA collective actions would not automatically divest this court of jurisdiction in this case. Rather, F&D would be required to file a motion in this court seeking reconsideration of the prior determination that the court has jurisdiction and to obtain a ruling from this court that the *Canaday* opinion is on point and should apply retroactively here. Even if the court were to rule in favor of F&D at that juncture, however, such a determination would *not* necessarily mean that proceedings involving the out-of-state opt-ins up until that time would be rendered entirely moot or that the court would have wasted judicial resources. Rather, the more expedient route, under those circumstances, would likely be to sever the claims of the out-of-state opt-ins into separate lawsuits grouped by state and then to transfer those cases to the appropriate courts under 28 U.S.C. § 1406. *See, e.g.*, *Does 1–144 v. Chiquita Brands Int'l, Inc.*, 285 F. Supp. 3d 228, 239 (D.D.C. 2018) ("Accordingly, severance of the claims for purposes of transfer to the proper jurisdictions is appropriate."); *Eastman Chem. Co. v. URS Corp.*, No. 2:10-CV-218, 2011 WL 3423389, at *11 (E.D. Tenn. Aug. 4, 2011) (severing claims against third-party defendants over which the court lacked jurisdiction and transferring those claims to an appropriate district under 28 U.S.C. § 1406(a)). This could occur with relatively minimal confusion to the out-of-state opt-ins and without unnecessarily stalling the proceedings relating to in-state opt-ins. Conversely, if the Sixth Circuit rules against the employer in *Canaday*,

but this court has nonetheless stayed notice to the out-of-state opt-ins, then the court and the parties would be burdened by dual discovery tracks and a repeat of written discovery, depositions, and motions practice.

Judicial economy would not necessarily be furthered by a stay.

### 2. *Prejudice to F&D*

F&D, as the party moving for a stay, "has the burden of proving that it will suffer irreparable injury if the case moves forward." *Int'l Bhd.*, 1989 WL 78212 , at *8. In order to satisfy this burden, F&D argues that, if the court authorizes notice to out-of-state individuals and "the Sixth Circuit then concludes that those individuals cannot participate in this case, the sending of notice will be exactly the type of court-sponsored solicitation that the Supreme Court expressly forbade in *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)." (Doc. No. 168, at 6 (also citing *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019), for the proposition that "alerting those who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what *Hoffmann-La Roche* flatly proscribes.")).) F&D claims that such prejudice will be irremediable, because "Plaintiff's counsel will already have the contact information for individuals who cannot participate in this case," and "Plaintiff's counsel will likely initiate new actions in other states for individuals they represent solely as a result of what would then be considered jurisdictionally improper but Court-sponsored notice." (*Id.* at 7.) If all of this occurred, then F&D will ultimately end up "expend[ing] significant resources litigating claims that it would never have faced absent Court-sponsored notice to ineligible opt-in plaintiffs." (*Id.*) It also claims that courts "routinely" grant stays in FLSA collective actions "when a pending appellate decision in another case could significantly affect the scope of the collective." (*Id.*)

Again, the court is not persuaded. First, in *Hoffman-LaRoche*, the Supreme Court held that, while the district courts have authority to facilitate notice in class actions, courts "exercising the

discretionary authority to oversee the notice-giving process . . . must be scrupulous to respect judicial neutrality" and, "[t]o that end, . . . must take care to avoid even the appearance of judicial endorsement of the merits of the action." 493 U.S. at 174. The proposed notice in this case satisfies that directive. In *JPMorgan Chase*, the Fifth Circuit applied that rule to mean that courts do not "have unbridled discretion" to send notice to potential opt-in plaintiffs and, specifically, do not have the authority to send notice to individuals who had signed valid arbitration agreements and, therefore, were ineligible to pursue collective action claims in court against the defendant. *JPMorgan Chase*, 916 F.3d at 502–04. Here, however, the court has already excluded from the definition of the collective action those individuals who have signed arbitration agreements. The question at issue is not whether the putative opt-ins can pursue their claims in a collective court action at all, but simply whether they can pursue them *in this venue*. And, if, as referenced above, the court ultimately determines (based on the outcome in *Canaday* or otherwise) that they cannot, transfer of those cases rather than outright dismissal will likely be indicated. The defendant will not be significantly prejudiced by being required to defend against colorable claims in the appropriate jurisdictions.

Second, and largely for the same reasons, those cases upon which F&D relies as holding that a stay was appropriate pending resolution of a Supreme Court or circuit court decision are inapplicable here, as they all involve situations in which resolution of the pending appeal would be dispositive of an entire claim or defense to a cause of action as a whole. *See, e.g.*, *Santti v. Menard, Inc.*, No. 4:17CV1243, 2017 WL 8784743 (N.D. Ohio Dec. 21, 2017) (granting motion to stay an FLSA collective action pending the Supreme Court's decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018), which was "likely to directly affect the present action," in which the plaintiff challenged the validity and enforceability of the Arbitration and Waiver Provisions of

the Employment Agreement she had signed, as *Epic* would (and ultimately did) consider whether the Federal Arbitration Act's saving clause provided a basis for refusing to enforce an arbitration agreement that incorporates a waiver of the ability to bring a collective action under the FLSA); *Griffith v. Menard, Inc.*, 2:18-cv-81, 2018 WL 1907348, at *3–4 (S.D. Ohio Apr. 23, 2018) (same, entering stay and noting that *Epic* would impact the plaintiffs' ability to proceed in court); *Campanelli v. ImageFIRST Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2017 WL 2929450, at *3 (N.D. Cal. July 10, 2017) (granting a stay pending issuance of *Epic*, because the decision would have a "dramatic impact on the size of the putative class/collective"); *see also Fed. Trade Comm'n v. Lending Club Corp.*, No. 18-cv-02454-JSC, 2020 WL 4898136, at *1(N.D. Cal. Aug. 20, 2020) (finding that a stay was warranted, because the Supreme Court was "poised to address 'an issue of enormous consequence to this case,'" specifically, whether the Federal Trade Commission was authorized "to seek monetary relief at all"); *Kirchgessner v. CHLN, Inc.*, No. CV-15-1048-PHX-SMM, 2016 WL 9525224, at *1 (D. Ariz. May 11, 2016) (staying action pending the Ninth Circuit's resolution of an appeal raising the same issue confronting the district court, which was expected to be dispositive of whether counts 1 and 2 of the FLSA complaint stated an FLSA minimum wage violation at all).

Here, the question of whether the opt-ins will have signed arbitration agreements is no longer at issue, and the defendant does not argue that the Sixth Circuit's decision will affect the question of whether the plaintiff has stated a colorable claim under the FLSA. The cases upon which F&D relies are simply inapposite, and the court finds that it has not satisfied its burden of showing a likelihood of irreparable harm if a stay is not granted.

### 3. Prejudice to the Plaintiff

F&D argues that a stay would not prejudice the plaintiff or the putative opt-ins, because it proposes that the out-of-state opt-in plaintiffs' claims be tolled pending resolution of the Sixth

Circuit appeal. As the plaintiff points out, however, that case has yet even to be briefed, there is no indication whether it will then be appealed to the Supreme Court, and staying the out-of-state individuals' claims indefinitely is potentially prejudicial to the plaintiffs. As the court has already acknowledged, F&D's workforce appears to turn over fairly rapidly. Where, as here, the case has already been delayed for nearly a year while the parties have litigated issues relating to arbitration agreements and no discovery has been conducted, staying the case and allowing F&D to withhold contact information for out-of-state members would likely compound the difficulty of locating and contacting putative members. With the passage of time, the contact information for former full-time employees in F&D's possession will become increasingly inaccurate. In addition, for individuals whose claims may be small, additional delay will serve to disincentivize their participation, as they move on to different jobs and their tenure at F&D becomes more remote in time. And people's memories fade—those of the putative plaintiffs and those of F&D witnesses as well. *See Hoffman-La Roche*, 493 U.S. at 170 (finding that employees must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate"). This factor weighs heavily against an indefinite stay.

### 4. Conclusion

Weighing these factors leads the court to conclude that the defendant has not met its burden of showing that a stay is necessary to protect the interest of judicial economy or avoid irreversible harm to the defendant. The motion to stay will be denied.

### B. Whether to Alter the Class Definition

Now, after the parties have already litigated how the FLSA collective should be defined, the defendant seeks to further narrow that definition, excluding notice to those who were hired and terminated the same day and those who worked fewer than three full days. More specifically, F&D seeks to be excused from including on the list of putative members of the collective to be provided

to the plaintiff those individuals who fall in that category. Although it does not formally request a modification of the definition of the collective, F&D cites a number of cases that have held that an FLSA collective should be defined to include only those individuals who worked more than forty hours in at least one work week. *See, e.g.*, *Hollis v. Alston Pers. Care Servs., LLC*, No. 1:16CV1447, 2017 WL 3327591, at *4 (M.D.N.C. Aug. 3, 2017) (limiting notice to employees who may have submitted time cards reflecting more than forty hours of work in one week); *Watson v. Adv. Distrib. Servs., LLC*, 298 F.R.D. 558, 565 (M.D. Tenn. 2014) (Trauger, J.) (requiring that notice be limited to employees who worked over forty hours in a workweek).

While it is true that only individuals who actually worked overtime and were not properly paid for that overtime work will be entitled to recover under the FLSA, this is clearly another matter the defendant could have brought to the court's attention before now. In response to this portion of the Expedited Motion, the plaintiff argues that the defendant's argument is untimely and that it has presented no valid reason for its failure to raise this issue in its opposition to the plaintiff's conditional certification motion, as a result of which it waived this argument. He also contends that the defendant improperly seeks to exclude individuals who the defendant *believes* do not have viable claims and that "choosing which plaintiffs within the collective are entitled to notice based on Defendant's perception of the merits of their claims is not Defendant's prerogative." (Doc. No. 170, at 12.) Finally, the plaintiff argues that the court should not reconsider its prior ruling based on the "hypothetical chance that some individuals who do not have claims may opt in" or continue to "litigate the scope of the collective action indefinitely." (Doc. No. 170, at 15.)

The defendant's failure to raise this issue previously is entirely unjustified, and the court will not continue to litigate indefinitely the scope of the collective action. Moreover, the defendant

has not raised any objection to the plaintiff's Motion for Approval of Revised Notice. This portion of the defendant's Expedited Motion will also be denied.

Further, because the plaintiff's proposed Amended Notice complies with the Order granting conditional certification, and the defendant has not raised any new objection to it, the Motion for Approval will be granted.

## IV.    CONCLUSION AND ORDER

For the reasons set forth herein, the defendant's Expedited Motion to Stay Notice for Out-of-State Individuals, to Exclude Notice to Individuals Who Worked Three or Fewer Total Days, and for an Accelerated Telephonic Hearing (Doc. No. 167) is **DENIED**, and its Request for a Telephonic Hearing or, in the Alternative, Motion for Leave to File a Reply (Doc. No. 171) is **DENIED AS MOOT**.

The plaintiff's Motion for Approval of Revised Notice (Doc. No. 166) is **GRANTED**, and the proposed Amended Notice is **APPROVED**, subject to the plaintiff's inclusion of the appropriate dates in paragraph 4 thereof, prior to distribution.

The defendant must supply the names and contact information for those entitled to notice of this action by the close of business on **Tuesday, November 17, 2020**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge