IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GERMMA HAMMOND, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No: 3:19-cv-1099 ) ) JURY TRIAL DEMANDED ) |
| v. | ) ) Collective Action ) |
| FLOOR AND DECOR OUTLETS OF AMERICA, INC., | ) ) ) ) |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO APPROVE SETTLEMENT**

**I.        Introduction**

Subject to Court approval, Named Plaintiff Germma Hammond, on behalf of himself and all opt-in plaintiffs (collectively, "Plaintiffs" or "Collective Action Members"), and Defendant Floor and Décor Outlets of America, Inc. ("Defendant" or "F&D") (together with Plaintiffs, the "Parties") have entered an agreement to settle Plaintiffs' overtime claims under the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. §§ 201–19. The Parties' Joint Stipulation of Collective Action Settlement and Release (the "Settlement Agreement") resolves all Plaintiffs' FLSA claim and any state-law wage and hour claims that were, or could have been, brought in this action (collectively the "Released Claims").

The Plaintiffs respectfully request that the Court enter an order: (1) approving and adopting the terms of the Parties' Settlement Agreement, including the payments to Plaintiffs, the service award to the Named Plaintiff, and the payment of attorneys' fees and costs to Plaintiffs' counsel;

(2) dismissing with prejudice Plaintiffs' Released Claims against Defendant, consistent with the release contained in the Settlement Agreement, and dismissing with prejudice this civil action, as there are no issues remaining for the Court's attention following approval of the Settlement Agreement; and (3) retaining jurisdiction over the Parties to the Settlement Agreement for the purposes of interpretation, compliance, and enforcement of the Settlement Agreement. A proposed order is attached hereto as Exhibit A.

## II. Plaintiffs' Claims, Defendant's Defenses, and Procedural History

On December 10, 2019, Plaintiff Germma Hammond ("Hammond") filed this lawsuit in the U.S. District Court for the Middle District of Tennessee, alleging that F&D failed to pay him overtime for all hours worked over 40 each workweek, in violation of 29 U.S.C. § 207(a). [Dkt. 1.] F&D filed a motion to compel arbitration and/or to dismiss on March 5, 2020. [Dkt. 29.] F&D claimed that, among other things, Hammond was subject to a binding arbitration agreement located in F&D's handbook. [Dkt. 30.]

The Court denied F&D's motion to compel and/or to dismiss on May 13, 2020. [Dkt. 41.] The Court then set a case management conference for June 24, 2020, and F&D filed an answer to the Complaint on May 27, 2020. [Dkt. 45.]

On June 2, 2020, F&D filed a motion to stay and for expedited discovery, seeking to depose Hammond over whether he consented to arbitrate his claims and to stay further proceedings pending a minitrial over the arbitration issue. [Dkt. 47.] On June 24, 2020, and June 29, 2020, the Court held two conference calls with the Parties and heard arguments on whether to stay the case pending an arbitration hearing. [Dkt. 66-67.] On July 15, 2020, the Court held an evidentiary hearing on the arbitration issue. On July 21, 2020, the Court issued a Memorandum Opinion

finding that there was no meeting of the minds and that no contract to arbitrate was formed in this case. The Court accordingly denied F&D's motion to compel. [Dkt. 97.]

On June 17, 2020, Hammond filed a motion for conditional certification, along with seven supporting declarations from other former F&D employees in California, Missouri, and Tennessee, alleging that Mr. Hammond is similarly situated to other F&D employees. [Dkt. 51.] On November 3, 2020, the Court granted Hammond's motion for conditional certification, in part. [Dkt. 163.] The Court thereafter certified Hammond's proposed collective and authorized nationwide notice to all similarly situated F&D employees, namely employees who did not affirmatively sign arbitration agreements. [*Id.*] It further directed F&D to turn over the names and contact information of the relevant employees. [*Id.*] Plaintiffs' counsel transmitted the Court-approved notice via email and regular U.S. Mail. In total, 32 additional plaintiffs have joined this case.[1]

In the Complaint, Plaintiff alleged that F&D violated the FLSA by failing to pay Hammond and all others similarly situated for all hours worked over 40 in a workweek at 1.5 times their regular rates of pay. [Dkt. 1.] Additionally, Plaintiff alleged that F&D's violations lacked good faith and reasonableness, entitling Plaintiffs to an equal amount of liquidated damages under 29. U.S.C. § 216(b), and that F&D's violations were willful, extending the statute of limitations from two to three years under 29 U.S.C. § 255(a).

F&D vigorously denied liability on all claims. Additionally, F&D maintained that certification of a collective action was inappropriate.

---

[1] Although two Collective Action Members, Fierce Taylor and Edgar Cardona, had their claims dismissed to arbitration, [Dkt. 164], for settlement purposes only, the Parties agreed to resolve their claims through this settlement.

Shortly after the opt-in period ended, the Parties agreed to mediate the claims in the case before Mediator Tripper Ortman, an experienced wage and hour class and collective action mediator. [Dkt. 201.] Since mediation, Collective Counsel fully informed all Collective Action Members of the terms of the Settlement Agreement, and no Collective Action Member objected to the division of settlement proceeds and attorneys' fees in the agreement. [Nobile Decl., ¶ 5.]

### III. The Terms of the Settlement Agreement

The Parties attended a virtual mediation conducted by the accomplished and experienced employment mediator Tripper Ortman on August 17, 2021. Mr. Ortman worked diligently to assist the Parties with reaching this resolution. The virtual mediation lasted all day, but the Parties ended in an impasse. Both sides, however, subsequently accepted a mediator's proposal on August 18, 2021.

At the mediation, attorneys Charles Yezbak of Yezbak Law and Diana Nobile of McGillivary Steele Elkin LLP (hereinafter, "Collective Counsel"), who are experienced wage-and-hour litigators, represented Collective Action Members. Named Plaintiff Hammond also participated in mediation.

Attorneys Lincoln O. Bisbee and Russell R. Bruch of Morgan Lewis, who are likewise experienced wage-and-hour litigators, represented F&D during the mediation. A F&D representative with settlement authority to enter into an agreement on behalf of F&D also participated in the mediation for Defendant.

Countervailing arguments and positions were professionally and civilly posited, discussed, and analyzed by competent counsel and the Parties' representatives. Only after a long and protracted day of settlement discussions and intensive analysis led by Mr. Ortman and a mediator's proposal were the Parties able to come to an agreement suitable and acceptable to all.

A description of the Settlement Agreement reached at mediation—set forth in the Settlement Agreement attached as **Exhibit 1**—follows.

The Parties agree that the gross settlement amount (the "Gross Settlement Amount") is $350,000. The Gross Settlement Amount covers: (1) all payments to Collective Action Members; (2) Collective Counsel's fees and costs; and (3) a service award to Plaintiff Gemma Hammond. The Gross Settlement Amount will not include: (1) the employer's share of taxes due on portions of any settlement attributable to wages and (2) the costs of a Settlement Administrator, both of which shall paid by Defendant.[2]

In consideration of and in exchange for the Plaintiffs' execution of the Settlement Agreement and the release contained therein, F&D agrees to the following distribution:

***Back Pay and Liquidated Damages to the Collective Action Members.*** The Settlement Agreement provides $35,844.76 to the Collective Action Members distributed in accordance with Exhibit A to the Settlement Agreement. As set forth in Exhibit A, 50% of this amount will be treated as back pay, and 50% will be treated as liquidated damages. Collective Action Members and their counsel determined a method used to calculate the amounts to be paid to each Collective Action Member, based on the payroll and timekeeping data provided by Defendants for each individual Collective Action Member. The calculation methodology computes individual damages for each Collective Action Member for the claims asserted against Defendants in the above-captioned lawsuit. Each of the Collective Action Members have received notice of the amounts

---

[2] As set forth in the Settlement Agreement, the Settlement Administrator will handle distribution of the settlement amounts to the Collective Action Members and will facilitate distribution of a Notice explaining the Settlement Agreement to the Plaintiffs, as well as the tax treatment of the payments. Notably, as explained above, Collective Counsel has already informed all Collective Action Members of the terms of the Settlement Agreement, including the allocation of amounts to the Collective Action Members and attorneys' fees, and no Plaintiffs' have objected.

calculated for them, and have either approved the settlement or failed to present objections as invited.

The $35,844 in damages was calculated through the following steps. To determine the hours worked, Collective Counsel's internal data and damages calculation expert[3] used defendant's timekeeping data for each Collective Action Member, using a three-year recovery period based on the date each Collective Action Member's consent form was filed in Court. Then, the expert added the following amounts to each Collective Action Member's worktime: (1) an additional 15 minutes per day for alleged off-the-clock work; (2) all time deducted for a meal break where Defendant's data demonstrated that a supervisor retroactively assigned a "meal period"; and (3) all time deducted for rest or meal breaks of 20 minutes or less where Defendant's data demonstrates a Collective Action Member clocked out (or was clocked out) for a short break without pay. Collective Counsel then compared the amount of pay that was actually paid by F&D to the amount of pay that would have been owed if these additional amounts were treated as compensable work time. An equal amount in liquidated damages was added to the back pay.

***Service Award to Named Plaintiff Hammond.*** The Settlement Agreement provides a $5,000 Service Award to Plaintiff Hammond, in recognition of his substantial time and effort expended leading up to and participating in mediation and in exchange for executing a general release of claims against Defendant.

***Attorneys' Fees and Expenses.*** The Settlement Agreement provides for payment of Plaintiffs' attorneys' fees in the amount of $309,155.24, which represents $294,203.91 in

---

[3] Mr. Rich DeBoard prepared damages calculations in this matter. Mr. DeBoard has served as a data analyst for McGillivary Steele Elkin in over 100 cases and has expertise in analyzing data from pay and time and attendance systems and using that data to prepare calculations. [Nobile Decl., ¶ 17.]

attorneys' fees and $14,951.33 in expenses.

Upon satisfaction of the terms of Settlement Agreement Paragraph 6, all Collective Action Members agree to release F&D from any and all claims under the FLSA, including both asserted and unasserted claims, through the date of the Court's final approval of the Settlement Agreement. Additionally, the agreement provides the following regarding the Released Claims:

> Upon the Court's approval of this Agreement and order dismissing the Action with prejudice, the Plaintiffs shall release any and all claims, obligations, causes of action, actions, demands, rights, and liabilities, whether known or unknown, whether anticipated or unanticipated, related to any and all claims under the FLSA, and all other federal and state wage and hour and wage payment laws concerning a Plaintiffs' employment with any of the Released Parties at any time arising prior to the Effective Date. This includes, but is not limited to, all asserted or unasserted claims based any of the following: (1) alleged failure to pay wages (in whole or in part); (2) alleged failure to pay overtime wages (in whole or in part); (3) alleged failure to pay minimum wages; and (4) alleged violations of laws regarding deductions to wages, failure to provide breaks and inaccurate wage statements (collectively the "Released Claims"). The Released Claims also include, but are not limited to, any and all of the following based on any of the matters provided for above in this paragraph: penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief.

Settlement Agreement, ¶ 6. Collective Counsel believe this Settlement Agreement represents a fair and reasonable result. F&D vigorously denied liability, and their expert presented a far lower assessment of potential damages in this matter at mediation. Moreover, given the timing of this case, many Plaintiffs only worked for F&D during the third year of the recovery, meaning their claims would be time barred unless Plaintiffs could prove that F&D's violations were willful. Further, the day of the mediation, the Sixth Circuit issued a decision in *Canaday v. Anthem Cos.*, No. 20-5947, 2021 U.S. App. LEXIS 24523 (6th Cir. Aug. 17, 2021), upholding a lower court's decision dismissing out-of-state plaintiffs in an FLSA case on personal jurisdiction grounds because the nonresident plaintiffs did not satisfy the requirements of *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1781 (2017). Given F&D's previous litigation position in this

matter, Collective Counsel anticipated that F&D would have quickly moved to dismiss the 29 non-resident Collective Action Members in this case, thus requiring refiling of their claims in a different forum.

Collective Counsel believes that the Settlement Agreement represents an excellent result on the Collective Action Members' Released Claims, and provides them with relief they could not have obtained absent overcoming the procedural challenges noted above and succeeding at trial. Considering these challenges and the delay, expense, and risk of continuing though a trial and potential appeal, recovering these amounts without additional, significant delay or the risk of loss represents an excellent result for the Collective Action Members.

Thus, with the assistance of an experience mediator, the Parties have reached a fair resolution of disputed claims. This Court should approve the Parties' Settlement Agreement.

**IV.   Legal Standards and Argument**

    **A.   The FLSA Agreement is fair, reasonable, and adequate, and this Court should approve it.**

When parties settle FLSA wage claims, they must seek court approval for the proposed settlement. *Simmons v. Mathis Tire & Auto Serv.*, 2015 U.S. Dist. LEXIS 114008, at *2 (W.D. Tenn. Aug. 20, 2015). "[A]pproval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation." *Edwards v. City of Mansfield*, 2016 U.S. Dist. LEXIS 64159, at *10 (N.D. Ohio May 16, 2016); *see also Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310, at *3 (E.D. Mich. Jan. 27, 2016) (stating that district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"). Settlement agreements ensure that plaintiffs will receive compensation for the alleged violations at issue. As the *Edwards* Court explains, "'the certainty and finality that comes with settlement also weighs in favor of' approving a fair and reasonable settlement." *Edwards*, 2016

U.S. Dist. LEXIS 64159 at *10 (quoting *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8, 2010)).

The standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement, because "an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement." *Flores v. One Hanover, LLC*, 2014 U.S. Dist. LEXIS 78269, at *19 (S.D.N.Y. June 9, 2014). If the proposed settlement reflects a reasonable compromise over contested issues, a district court should approve the settlement. *Simmons*, 2015 U.S. Dist. LEXIS 114008 at *2.

The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* When considering the fairness, reasonableness, and adequacy of a proposed agreement, the court "should also consider the following factors: [1] the risk of fraud or collusion, [2] the complexity, expense, and likely duration of the litigation, [3] the amount of discovery completed, [4] the likelihood of success on the merits, and [5] the public interest in settlement." *Survance v. Healthcare Servs. Grp., Inc.,* 2015 U.S. Dist. LEXIS 146928, at *3–4 (N.D. Ohio Oct. 29, 2015) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Edwards*, 2016 U.S. Dist. LEXIS 64159, at *7–8.

> **1. The adversarial nature of the litigation demonstrates that the Settlement Agreement is the result of a bona fide dispute, eliminating the risk of fraud or collusion.**

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement" and "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Simmons*, 2015 U.S. Dist. LEXIS 114008 at *2. This reasoning applies here, and the Court should approve the FLSA Agreement.

As discussed above in Section III, the Settlement Agreement is the result of an intensive, arm's length mediation with Mr. Ortman, where the Parties were represented by counsel experienced in wage-and-hour law. The Parties also conducted sufficient pre-mediation discovery to adequately assess the strengths and weaknesses of each side's positions. F&D provided Collective Counsel with detailed pay and timekeeping data for each Collective Action Member. The Parties each engaged in independent damages calculations, which yielded vastly different results as to the potential damages available should Plaintiffs prevail at trial. The first factor therefore supports this Court approving the Settlement Agreement.

### 2. The complexity, expense, and likely duration of the litigation support approving the settlement.

There are several factors that both Parties reasonably believed would serve to increase the anticipated expense, complexity, and duration of this case. *First*, discovery disputes would have expended significant resources, including the scope of written discovery, depositions, expert discovery. *Second*, no depositions have been taken in this matter. *Third*, given the vigorous litigation strategy and F&D's positions taken in this case, the Parties were headed to a dispute on the scope of such discovery, which may have been quite costly because Collective Counsel anticipated that F&D would seek written discovery and deposition testimony from each Collective Action Member, thus resulting on briefing on the appropriate scope of discovery. *Fourth,* Plaintiffs anticipate Defendant would have moved to dismiss the out-of-state opt-ins claims considering the Sixth Circuit's *Canaday* decision and that F&D would have moved for decertification of the collective at the close of discovery. *Sixth*, the Parties anticipated filing cross-motions for summary judgment on several issues. *Finally*, trial of this matter would have been complex, and if F&D was successful in decertifying the collective or dismissing out of state opt-ins, it could have been severed into multiple trials across multiple jurisdictions.

Based on the foregoing, continued litigation through trial and possible appeal would have been complex and costly relative to the damages at issue. The second factor strongly supports this Court approving the FLSA Agreement.

### 3. Discovery has advanced far enough to allow the Parties to resolve the case responsibly.

F&D provided pay and hours worked data to Collective Counsel, which formed the basis of the Collective Action Members' claims. Moreover, Collective Counsel extensively interviewed ten of the Collective Action Members and investigated the scope of their wage-and-hour claims to prepare for mediation. The Parties accordingly have conducted sufficient discovery to resolve this matter. The third factor weighs in favor of this Court approving the FLSA Agreement.

### 4. Significant litigation risk exists on certain issues and weighs in favor of approving the Settlement Agreement.

Plaintiffs certainly believe their legal position is strong. Defendant, for its part, takes great issue with Plaintiffs' allegations and has (and continues to) vehemently contest Plaintiffs' allegations and claims. As is customary, the Settlement Agreement reflects that the settlement is a "compromise of disputed claims" and is not an admission by Defendant of any liability whatsoever.

The Parties feel that they have strong positions and that they will ultimately disprove the other's position, with a bona fide dispute about the merits of the claims and defenses. The Parties recognize that continued litigation, by its very nature, presents certain risks and significant expenses for both sides. As the Eastern District of Michigan has eloquently observed, "[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411, at *50 (E.D. Mich. Oct. 18, 2010).

Plaintiffs recognize that there is a significant risk of receiving less than all the damages they seek even if they win the case. F&D also maintains that it acted in good faith, such that no liquidated damages would be awarded, and that any violations Plaintiffs might prove were not "willful," such that the default two-year FLSA statute of limitations, rather than the three-year statute of limitations for willful violations, would apply. This would eliminate damages completely for more than half of Collective Action Members, who did not work within the two year limitations period. The fourth factor strongly supports this Court approving the Parties' settlement.

### 5. The public interest weighs in favor of approving the Settlement Agreement.

The resolution of this litigation, among other things, provides back pay and an equal amount in liquidated damages to all Collective Action Members for their alleged unpaid overtime claims for a three-year period. These benefits are consistent with the public interest. The Settlement Agreement benefits the Parties and serves the public interest, *Edwards*, 2016 U.S. Dist. LEXIS 64159, at *10, and this Court should approve it.

### B. The service award to Named Plaintiff Hammond is fair, reasonable, and adequate, and this Court should approve it.

The proposed service award of $5,000 to Named Plaintiff Hammond is fair, reasonable, and adequate. As one court explained in approving service payments, "In a wages and hours case, where a low level [sic] employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574, at *27 (S.D.N.Y. May 23, 2014). Service payments in wage-and-hour actions "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts," *Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530, at *47 (S.D.N.Y. Sept. 30, 2015), and reflect the vocational risks

assumed by a named plaintiff and the contribution to the progress of a case made by a plaintiff who secures counsel and participates in discovery, *see, e.g., Bozak v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 106042, at *11–15 (D. Conn. July 31, 2014) (approving a $10,000 service payment to the named plaintiff). "[B]ecause a named plaintiff is an essential ingredient of any [collective] action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit" and to other participating plaintiffs because class counsel "may need the support and assistance of other class members who are not named plaintiffs" during the litigation. *Scovil v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 33361, at *23 (D. Me. Mar. 14, 2014) (approving service payments between $10,000 and $20,000 to named and participating plaintiffs). To determine whether a service payment is warranted, courts consider "the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort they have expended in pursuing the litigation, and any negative effects that they have risked." *Id.*

Here, Hammond expended significant time for the benefit of all the Plaintiffs. [Yezbak Decl., ¶ 3.] He met with counsel for extended periods during the initial-investigation stage and continued to assist counsel while counsel drafted the complaint and investigated the scope of any FLSA violations and throughout the litigation as needed. Hammond also assisted counsel by identifying key witnesses and arranging for communications with these witnesses. Additionally, Hammond prepared for and provided extensive testimony before the Court in the evidentiary hearing in this matter, overcoming F&D's attempt to dismiss his claim. Moreover, Hammond's declaration formed the basis of the motion for conditional certification of a collective action that resulted in notice to the Collective Action Members. And Hammond prepared for and participated in a lengthy mediation on behalf of the Collective Action Members. Further, he committed to

13

Case 3:19-cv-01099   Document 210   Filed 11/02/21   Page 13 of 20 PageID #: 2460

sitting for a deposition and to testify at trial as needed (even though he did neither because the case settled). Hammond was responsive and diligent in his activities as named plaintiff, and he served the other Collective Action Members well. [*Id.*] If the Court approves the Settlement Agreement, Mr. Hammond will receive $5,000 as a service payment, in addition to his back wages and liquidated damages, for these efforts and for agreeing to a general release of his claims.

Importantly, the proposed service award is entirely reasonable and well within the range awarded by district courts in this Circuit and by other courts in wage-and-hour actions.[4] Hammond performed substantial services and bore substantial risk, which ultimately resulted in what Collective Counsel considers an excellent settlement on behalf of the collective. This Court accordingly should approve the service award to Mr. Hammond.

---

[4] *See, e.g.*, *Karic v. Major Auto. Cos.*, 2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) (approving $20,000 service awards to 7 named plaintiffs); *Bijoux v. Amerigroup N.Y., LLC*, 2016 U.S. Dist. LEXIS 68969 (E.D.N.Y. May 12, 2016) (approving service payments between $2,000 and $10,000 for participating plaintiffs); *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) (approving a $15,000 service award to named plaintiff); *Abadeer v. Tyson*, 3:09-cv-00125, Dkt. 420 (M.D. Tenn. October 17, 2014) (approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives); *Fosbinder-Bittorf v. SSM Health Care*, 2013 U.S. Dist. LEXIS 152087 (W.D. Wis. Oct. 23, 2013) (approving service payments between $5,000 and $15,000 to named and participating plaintiffs); *Henry*, 2014 U.S. Dist. LEXIS 72574 (approving $10,000 service awards to named plaintiffs); *Hernandez v. Merrill Lynch & Co.*, 2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) (approving service payments of $15,000 to named plaintiffs, $12,000 to participating plaintiffs, and $4,000 to an opt-in plaintiff); *Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 to named plaintiffs and $5,000 to opt-in plaintiffs); *Lovaglio v. W & E Hospitality, Inc.*, 2012 U.S. Dist. LEXIS 94077 (S.D.N.Y. July 5, 2012) (approving service awards of $10,000 to named plaintiffs); *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (awarding service payments ranging from $7,000 to $30,000); *Torres v. Gristede's Operating Corp.*, 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) (approving service awards of $15,000 to 15 named plaintiffs).

### C. Attorneys' fees are recoverable under the FLSA, and this Court should award fees as set forth in the FLSA Agreement.

The FLSA provides, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees under § 216(b) is mandatory if Plaintiffs prevail. *Smith v. Service Master Corp.,* 592 F. App'x 363, 367 (6th Cir. 2014); *Montgomery Ward & Co. v. Antis*, 158 F. 2d 948 (6th Cir. 1947). Congress enacted fee-shifting statutes such as the FLSA "to ensure that federal rights are adequately enforced." *Morales v. Farmland Foods, Inc.*, 2013 U.S. Dist. LEXIS 56501, at *19 (D. Neb. Apr. 18, 2013) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010)). "Under a fee-shifting statute, a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious action to vindicate the rights protected under the statute." *Id.* (quoting *Perdue*, 559 U.S. at 552). When assessing a reasonable fee under the FLSA, the court should consider approving awards that encourage "attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens." *Id.* (citing *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993)).

Notably, the Sixth Circuit does not apply a proportionality analysis when awarding fees under 29 U.S.C § 216(b). This supports one of the core purposes of the FLSA:

> The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to attract competent counsel to represent them.

*Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021). As such, "a district court abuses its discretion if it limits the fees awardable under the FLSA to a percentage

of the plaintiff's recovery." *Id.*; *see also Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (noting that neither the text nor purposes of the FLSA support applying a proportionality principle to an award of attorneys' fees).

Collective Counsel has extensive experience litigating multi-plaintiff wage-and-hour actions, and they contend that they litigated and settled this case efficiently. [Yezbak Decl., ¶ 3-14; Nobile Decl., ¶ 6-22.] Collective Counsel took this case on a contingency basis, with the understanding that if there was no recovery there would be no entitlement to any fees. [Yezbak Decl., ¶ 17; Nobile Decl., ¶ 3.] Plaintiffs' counsel also agreed to advance all expenses necessary to litigate this case to completion. [Yezbak Decl., ¶ 17; Nobile Decl., ¶ 3.] Named Plaintiff Hammond agreed to pay either a 40% contingency fee or Plaintiffs' counsel's hourly fees, whichever is greater. [Yezbak Decl., ¶ 17; Nobile Decl., ¶ 3.]

Additionally, this litigation was protracted with 173 docket entries before the notice period even commenced. The Plaintiffs obtained a significant level of success in the settlement as well as the litigation, including but not limited to: defeating a motion to dismiss and multiple motions to stay, successfully presenting evidence and argument at a one-day evidentiary hearing and an oral argument the following day, presenting evidence and argument in support of conditionally certifying the collective, and presenting arguments in opposition to F&D's attempt to further limit the notice list after the Court's decision on conditional certification. It is, therefore, unsurprising that Collective Counsel's lodestar far exceeds the fees the Parties agreed to in the in the Settlement Agreement.[5]

---

[5] The total amount of attorneys' fees received under the Settlement Agreement is less than counsel's lodestar for all work performed in this matter. [Yezbak Decl., ¶ 20; Nobile Decl., ¶ 22.]

Moreover, the level of success obtained for the Collective Action Members likely exceeds what they could have expected to recover at trial given that, using a three-year statute of limitations, the Collective Action Members' settlement amounts accounts for an additional 15 minutes of uncompensated working time **per day**, payment for deducted meal and rests breaks, and an additional, equal amount of liquidated damages. Simply put, the result obtained on behalf of the Collective Action Members represents an excellent resolution of their claims which was due in large part to the effort, skill, and demonstrated commitment of Collective Counsel to litigate this case to a successful conclusion despite the relatively modest amount of unpaid wages at issue.

Despite the work performed and level of success obtained, Plaintiffs request a reduced fee for their counsel to facilitate this settlement. Plaintiffs request that this Court award Collective Counsel $294,203.91 which is approximately 42% of their lodestar. This Court should authorize the agreed payment of attorneys' fees and costs under the mandatory fee-shifting provisions of the FLSA, the fee agreement executed by Hammond[6] and adopted by the opt-in plaintiffs, and as described in *Rembert*.

Further, Collective Counsel contacted each Opt-in Plaintiff by email, text message, and/or telephone to explain the allocation method, the amount each Plaintiff would receive from that allocation, a detailed breakdown of Collective Counsel's attorneys' fees and costs, and other information relevant to the settlement of these matters. [Nobile Decl., ¶ 5.] Collective Action Members that communicated with counsel expressed their approval of the Settlement Agreement after being provided the above information. [*Id*.] No Collective Action Member has expressed

---

[6] Additionally, the Court-approved Notice in this matter set forth as follows: "By joining this lawsuit, you will designate the individually named plaintiff Germma Hammond as your agent for purposes of this lawsuit. He will be authorized to make decisions on your behalf concerning all aspects of the lawsuit, including entering into a settlement, adding parties, and entering into fee agreements with plaintiffs' counsel." Dkt. 166-1, p. 2.

disapproval of the Settlement Agreement or the attorneys' fees due to be paid under it. [Nobile Decl., ¶ 5.]

This Court accordingly should approve the proposed award of attorneys' fees and costs to Collective Action Members' Counsel under the Settlement Agreement.

**V.     Conclusion**

For the reasons set forth above, the Parties respectfully request that the Court enter an order:

1.     Approving the Settlement Agreement, including the distributions to Plaintiffs, the attorneys' fees and costs, and the service payment to the Named Plaintiff as set forth in Exhibit 1;

2.     Dismissing Plaintiffs' Released Claims with prejudice as to Plaintiffs identified in Exhibit A to the Settlement Agreement.

3.     Retaining jurisdiction over the Parties to the Settlement Agreement for the purposes of interpretation, compliance, and enforcement of the Settlement Agreement.

Dated: November 2, 2021               Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (TN BPR #18965)
/s/ *N. Chase Teeples*
N. Chase Teeples (TN BPR #032400)
YEZBAK LAW OFFICES PLLC
2021 Richard Jones Road
Suite 310-A
Nashville, TN 37201 Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

/s/ *Gregory K. McGillivary*
Gregory K. McGillivary (D.C. Bar 411029)*
/s/ *Diana J. Nobile*
Diana J. Nobile (D.C. Bar 997725)*
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue NW
Suite 1000
Washington, D.C. 20005
Tel.: (202) 833-8855
Fax: (202) 452-1090
gkm@mselaborlaw.com
djn@mselaborlaw.com

*Admitted *Pro Hac Vice*

# CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing has been filed via the Court's ECF filing system on November 2, 2021, which sent a copy to the following counsel of record:

Lincoln O. Bisbee
Russell R. Bruch
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, N.W.
Washington, DC 20001
Tel: (202) 739-3000
Fax: (202) 739-3001
lincoln.bisbee@morganlewis.com
russell.bruch@morganlewis.com

Keane A. Barger
Katharine R. Cloud
**RILEY WARNOCK & JACOBSON PLC**
1906 West End Avenue
Nashville, TN 37203
Tel: (615) 320-3700
Fax: (615) 320-3737
kbarger@rwjplc.com
kcloud@rwjplc.com

*Attorneys for Defendant*

/s/ Diana J. Nobile
Diana J. Nobile